Abrahams & Geller, J.
Food Fair Stores, Inc., prime tenant of Jackson Heights Shopping Center, Inc., snes to enjoin the construction of a building on the perimeter of the area designated and used as the parking area, which the parties have computed and stipulated would result in reducing its parking capacity from 400 to 350 cars. Surprising as it seems, despite the painstaking nature of the negotiations and the specialized experience and knowledge of shopping centers by the participants, there is no express provision or language in the lease definitively and conclusively disposing of such an important matter and parol evidence to explain and clarify the various provisions bearing on the issue has been presented on this trial by both parties.
The Food Fair lease was made in 1956 to commence when the Food Fair building and other stores within the shopping center to the extent of at least 200 linear front feet were completed. The lease was modified in 1958 when the shopping center was enlarged by the addition of adjacent land in the same ownership, increasing the Food Fair building area and rental, the contemplated area for other buildings and the parking area. Food Fair entered into possession in 1959. In February 1967 the landlord filed plans and proceeded with excavation for construction of this two-story store-and-office building 70 by 154 feet, on the perimeter of the parking area.
The* 1956 lease referred to a plot plan prepared by landlord’s architect and made a part thereof as annexed Schedule “A”. It showed the positions and dimensions of the building to be constructed for Food Fair, of the other stores to be built, and of the parking area. Similarly, the 1958 modification had attached thereto Schedule “A” prepared by the landlord’s architect showing not only the 200 linear front feet of stores required to be completed but also the location and dimensions to be included in an area contemplated for additional stores, *207 as well as the increased area for the Food Fair store and for the parking area.
Food Fair’s representative, following the architect’s boundaries of these designated parts in the plot plan, outlined the entire perimeter of the plot in green, the Food Fair store in red, and the parking area in yellow. The landlord conceded at the trial that it was the practice for a shopping center lease to show the entire perimeter of the plot in one color, the parking area in another color and that particular tenant’s building area in a different color.
The Food Fair lease for a total term with renewals of thirty-five years is for the premises “ as outlined in red on * * * Schedule 1A ’ together with the building to be erected thereon * * * and together with the right to use the premises outlined in yellow on Schedule 1 A ’ and marked 1 Parking Area The “Parking Area ” is not only for Food Fair but for all the stores included in the shopping center.
Paragraph 31 contains a covenant of quiet enjoyment, “ that Tenant shall have quiet possession and enjoyment of the Demised Premises and said Parking Area during the term of this lease ” (emphasis supplied).
Paragraph 32, which makes provision for the contingency of a reduction in the size of the parking area ‘ ‘ so long as such reduction of Parking Area thereafter continues,” with slightly different consequences if due or not due to ‘ ‘ any act of omission or commission of Landlord,” begins with the following clear and broad statement as to Tenant’s “ non-revocable right ” to the use of the parking space as shown in Schedule “ A ”: “ Landlord represents, warrants and agrees that, at all times during the term of this léase, Tenant shall have the non-exclusive and non-revocable right, together with other Tenants and occupants of the stores on the premises whereon Landlord contemplates their erection, as indicated in Paragraph 30 hereof, to the use of the parking space outlined in yellow on Schedule ‘ A ’ (hereinafter called ‘ Parking Area ’) and driveways appurtenant to the Demised Premises for purposes of ingress and egress, parking of motor vehicles for itself and its customers, and loading and unloading of vehicles in connection with and incidental to the business conducted by Tenant on Demised Premises ” (emphasis supplied).
Paragraph 42 provides that neither the landlord, its successors or assigns nor any subsidiary or controlling corporation shall ‘ ‘ alter, change or vary in any manner the location of the building improvements and parking facilities as to the said improve *208 ments and parking facilities are shown on Schedule ‘ A ’ attached hereto.” (Emphasis supplied.)
The landlord relies upon the opening clause of Par graph 30, which deals at considerable length with a restrictive covenant as to competing businesses. Paragraph 30 states: ‘ ‘ Landlord contemplates the erection of additional stores in the area of Demised Premises, as outlined in green on Schedule ‘ A ’, and Landlord agrees * * * [then follow the specific and detailed provisions of the restrictive covenant].” The landlord then ties in with this opening clause that portion of Paragraph 32 which reads: “If for any reason due to any act of omission or commission of Landlord, the size of Parking Area is reduced so that at least 225 cars cannot park thereon, all provisions with respect to minimum rental of $32,500 provided for in Paragraph 7 hereof, shall be deemed eliminated and deleted from this lease, and so long as such reduction of Parking Area continues, Tenant’s only obligation with respect to rental shall be the payment of 1% of gross sales during the said period (as set forth in Paragraph 7 hereof) payable after the expiration of each lease year of the term hereof (as defined in Paragraph 7); provided, however, that Tenant may at any time while such reduction in Parking Area continues, in addition to any other remedies available to it, on 10 days ’ written notice, terminate this lease.”
Landlord contends that the building of additional stores anywhere on the entire green-outlined perimeter of the plot,. embracing also the perimeter of the parking area, is authorized by the opening clause of Paragraph 30 and that such building in the parking area is an act of commission by the landlord reducing the size of the parking area within the meaning of Paragraph 32. Thus, the landlord takes the position that it has the right to build any number of stores in any portion of the shopping center, including the area delineated in yellow as the “ Parking Area,” provided there remains parking space for 225 cars. . .
The importance of the size and location of the parking area was clearly revealed at the trial. The Food Fair store as well as all the other stores in the shopping center fronted on the parking area, there being no entrances to any of the stores other than from the parking area. The landlord admitted that there had been discussions concerning the .customary “ 3 to 1 ” ratio in the shopping center business, that is, three square feet of parking area for each square foot of ground floor area in the shopping center. Food Fair agreed that, in view of this particular location within the city, it would *209 accept a parking area which amounted to a ratio of about 2 to 1. That parking area was located and bounded with specific dimensions in a particular area in the plot plan prepared by landlord’s architect and made a part of the lease.
The court cannot credit the testimony of landlord as to alleged conversations that ‘ ‘ here we will not have any definite parknig area but we will provide parking in terms of number of cars”; that “we don’t want to be limited to any specific location for parking”; that “ our conversation was that we would be able to build as many stores, of additional stores, as possible, subject only to the limitation with respect to a minimum number of cars that could be parked. ’ ’
Had there been any such conversation and understanding, there undoubtedly would have been an express provision in the lease explicitly stating that landlord had the right to build additional stores within the parking area provided parking space for 225 cars remained. Otherwise, the specifically outlined, represented and covenanted “ Parking Area,” as well as the specifically bounded area for additional stores, would be meaningless.
The opening clause of Paragraph 30 may have been ineptly phrased, but it was obviously intended merely as a general description of the “ additional stores in the area of Demised Premises, as outlined in green on Schedule ‘ A ’,” which would be covered by the terms of the restrictive covenant set forth at length in that paragraph. It cannot serve to enlarge the area specifically allocated for additional stores or reduce the area specifically allocated for the parking area, as shown in Schedule “A” and as contained in the various provisions of the lease expressly dealing with those specific matters. Schedule “A” plainly indicates that the parking area outlined in yellow is carved out of the plot outlined in green and the reference in Paragraph 30 to Schedule “ A ” necessarily means that, while additional stores could be built in the area as outlined in green on Schedule “A ”, they could not be built in the parking area as outlined in yellow on Schedule “ A ” within that green outline; otherwise, the outlining of the parking area in yellow would be meaningless.
Nor can Paragraph 32 with its formula for contingent reduction of parking space be made applicable to the right to build additional stores in the parking area resulting in a permanent reduction of parking space. Indeed, Paragraph 32 begins with a reaffirmation of the representation, warranty and agreement by the landlord that tenant shall have the nonrevocable right to the use of the parking space outlined in yellow on Schedule *210 “A”. Then follow three contingencies of reduction of parking space, the first two ‘1 not due to any act of omission or commission of the landlord ’ ’ and the last one ‘ ‘ due to any act of omission or commission of the landlord.” This is language not of right but of contingency, default or negligence. It is a distortion to argue that the .right to build additional stores was intended to be comprehended within the phrase, “ act of commission of the landlord,” and its reduction formula. Had that formula been intended .to apply to the building of additional stores, it would have been simply and directly inserted in the paragraphs dealing with the landlord’s right to build additional stores and in the paragraphs dealing with tenant’s .right to the use of the specified parking area.
Paragraph 32, moreover, is couched in temporary language and, with its rent abatement provision, is clearly intended to cover contingencies, “ so long as such reduction of Parking Area thereafter continues,” that might arise in the future, such as the failure to repair or maintain the parking area.
The formula itself indicates its nonapplicability to the building of additional stores. For a reduction of parking space below 225 cars it provides for some modification of the rent provision and the right of tenant to terminate the lease. Had it been intended to apply to the building of additional stores in the parking area, it obviously would have absolutely forbidden any resultant reduction below 225 cars, which was actually what landlord was urging throughout the trial as the alleged understanding of the parties.
The court accordingly finds no basis in the lease or in the evidence for the position taken by landlord. Plaintiff is entitled to judgment of permanent injunction as requested. Pursuant to stipulation entered in the record, the action is discontinued, without costs, as against the individual defendants upon their agreement to be bound by any judgment of injunction granted against the corporate defendant.