GULOTTA, Judge.
Defendant appeals from the trial court’s judgment enjoining construction of a 9,000-square-foot structure in the parking area in front of Barker’s Department Store on Veterans Highway. We affirm.
On June 10, 1966, Barker’s # 413 Corporation (hereinafter referred to as Barker’s) entered into a lease agreement with Lane N. Meltzer, defendant-lessor, who was to construct a 66,200-square-foot building for occupancy by Barker’s and to surface the ground in front of the building fronting on Veterans Highway for use by the tenant as a parking area. The proposed construction was completed according to plans and occupancy commenced. The Barker’s building and parking lot were situated on a single tract of land owned by the lessor.[1] The remaining portion of the tract, owned by Meltzer and also fronting on Veterans Highway to the east of Barker’s, was not leased to plaintiff. This portion of land remained vacant and was reserved by the lessor for future development.
In 1976, during the term of the lease,[2] defendant notified lessee of his intention to construct a 9,000-square-foot building in the parking lot area then utilized by Barker’s. After discussion between the parties without resolution to Barker’s satisfaction, this injunction suit followed.
It is defendant’s contention that the lease, by its terms, clearly provides the lessor with the right to construct additional rental space in the parking area now used by Barker’s, provided the lessor affords parking to the lessee which conforms to the provisions of the building code of Jefferson Parish.[3] In support of his argument, defendant relies on Article I of the lease and particularly emphasizes the last sentence of the second paragraph. Article I reads as follows:

Article I

“Lessor hereby leases, lets and demises unto Lessee a building to be constructed on land situated in Jefferson Parish, Louisiana, fronting on Veterans’ Highway, forming a part of Lot ‘Z’ shown on plan of survey by Adloe Orr, Civil Engineer, dated August 24, 1964, and outlined in red on a copy of said plan annexed hereto, upon which there shall be erected a one-story store building having a total floor area of approximately 66,200 square feet to be constructed by and at the expense of the Lessor in accordance with outline specifications which have heretofore been agreed to.
“Lessor agrees to construct, hard-surface, and stripe all of the areas on the premises shown as parking areas, at ground level, on the aforesaid plans and specifications and on the map or plan attached hereto and marked Exhibit ‘B’, such striping to be done for orderly distribution and placing of automobiles, in accordance with Lessee’s plan. Lessor and Lessee agree that Lessor shall have the right to build additional rental space and Lessor agrees that at all times the parking shall conform to the provision of the building code of the Parish of Jefferson, State of Louisiana.”
It is Barker’s contention, on the other hand, that the lease clearly provides toies-see the use of all existing parking area. Citing Article I of the lease, Barker’s argues that the contemplated construction of “additional rental space” is to take place only on the undeveloped portion of the tract (east and contiguous to the leased area and owned by Meltzer) not leased to Barker’s. *295 Reading this provision in pari materia with others in the lease, Barker’s contends that the prospective tenants (in the buildings to be constructed on the Meltzer-owned property contiguous to Barker’s building and parking area) would have joint use of the existing parking area, together with Barker’s, provided that parking requirements of the Parish code are met. The other lease provisions relied on by plaintiff in support of these arguments are:

Article IV

“Lessee shall pay as rent for the demised premises including, but not limited to, the building to be erected thereon, and joint use of all parking and other areas as shown on the map or plan attached hereto or made a part hereof, the sum or sums hereinafter set forth . . . .”

Article V(c)

“The premises demised to the Lessee, including but not limited to the building and all parking areas, shall be substantially completed . . .

Article V(d)

“Lessor covenants and agrees that throughout the term and any extended term of this lease it will provide the outside parking areas, on and as part of the herein demised premises, mentioned and described in ARTICLE I hereof, and that at all times during the term and any extended term hereof the Lessee and its sublessees, concessionaires, licensees and all other persons having rights under or through the Lessee, and its and their officers, agents, employees, customers and invitees, shall have the right to use said parking areas without any payment to the Lessor for the use thereof. * *”
Examining the contract itself without reference to any parol testimony, we are in agreement with plaintiffs interpretation of the lease. In Article V(d), the lessor agrees to provide the outside parking areas described in Article I throughout the term of the lease. The description of the parking area in Article I makes reference to Exhibit “B” (Appendix I) which portrays the parking lot area as it presently exists. Defendant’s interpretation is inconsistent with his obligation to provide the parking area so described. Though it is true that in Article I the parties contemplate the building of additional rental space, the lessor does not specifically reserve the right to build in the existing parking area. Furthermore, Article IV’s reference to the lessee’s paying of rent for the “joint use of all parking and other areas as shown on the map or plan” obviously has reference to the sharing of the parking area by Barker’s and future tenants occupying the additional rental space to be constructed. This joint use is of “all parking” as shown on Exhibit “B”. Reading these sections in pari mate-ria, we conclude that the lease provisions do not permit the lessor to construct additional rental space on the existing parking lot area.
Although objected to by defendant, the trial judge permitted the introduction of parol evidence to clarify the ambiguity he found in the lease because of the conflict between Articles I and IV. Though we do not perceive any such ambiguity, we do recognize, as do counsel, the absence of the “plan of survey by Adloe Orr, Civil Engineer, dated August 24, 1966” mentioned in Article I. This survey upon which a red outline was supposedly drawn was not annexed to the lease entered into evidence and its existence is unknown. We can only speculate as to the significance of this missing survey and the role it would have played in resolving the conflict between the parties. Nevertheless, the missing survey does make the lease before us incomplete, and under these circumstances, parol evidence is admissible to make up for the deficiency in the lease. Martin v. Martin, 233 So.2d 718 (La.App. 4th Cir. 1970). The parol evidence introduced in the instant case supports plaintiff’s interpretation and reinforces our conclusion.
Bernard R. Kossar, who negotiated the lease on behalf of Barker’s, testified that the lessee’s objective was to open a discount department store on a dominant retail and commercial thoroughfare, Veterans Highway. As argued by plaintiff’s counsel, it is *296 highly unlikely that Kossar would have agreed to a lease permitting the landlord to construct a building which would restrict visibility of the Barker’s store from the traveling public on the thoroughfare. Furthermore, Kossar testified that prior to the signing of the lease, Barker’s had rejected a preliminary plan dated July 6, 1965, in which the landlord proposed construction of a cafeteria building near the left front of the Barker’s store in the area presently used for parking. A subsequent plan dated January 18, 1966, reflecting further negotiations between the parties, situated the proposed cafeteria building at the corner near Veterans Highway on the undeveloped parcel of land adjacent to the existing Barker’s parking lot. Kossar testified that throughout the negotiations he had considered the tract of land upon which the Barker’s building is situated to be broken into three components: the building itself, the parking area and the vacant area reserved for future development.
In a letter from Kossar to Meltzer, dated April 1, 1966, which was also introduced into evidence, Barker’s took the position that the parking ratio as it existed at the commencement of the lease would be maintained as new buildings were constructed on the vacant portion of the tract. Kossar testified that Barker’s had modified its position through further negotiations to the extent that only the minimum parking requirements as set forth in the parish code were to be maintained as new buildings were constructed in the vacant portion of the tract. The witness further testified that the lease provisions reflect the latest negotiations and give Barker’s and the tenants of any new buildings to be constructed in the undeveloped portion the right to jointly use the existing parking lot and any other parking surface to be constructed. Considering this evidence, together with the lease itself, we conclude the trial judge properly enjoined defendant lessor from constructing any building or doing any work, except for necessary maintenance, in the area presently paved and striped for parking directly in front of the Barker’s store as shown on Exhibit “B” attached to the lease.
We do modify the judgment of the trial court in two respects, however. In the judgment, the trial judge, after enjoining construction of any building in the existing parking area, makes reference to the area as defined on Exhibit “B” and adds the following: “which said area presently consists of approximately 393 parking spaces”. Because no specific number of parking spaces is guaranteed to the lessee, under the terms of the lease, other than the minimum required under the building code of the Parish of Jefferson, we delete this above quoted reference to 393 parking spaces from the judgment.
The judgment further recites:
“It is further ORDERED, ADJUDGED AND DECREED that the peaceful use, enjoyment, and possession of all of such area for vehicular parking by plaintiff, Barker’s # 413 Corporation, or its successors, assigns, designees, customers, employees, or invitees shall not be disturbed by defendant, Lane N. Meltzer or his heirs, successors, assigns, agents, transferees, administrators, representatives or anyone acting on his or their behalf or in concert with him or them until such time as the said lease agreement between the parties, dated June 10, 1966, including any option periods, renewals, or extensions thereof, shall have been terminated and cancelled.”
Because we interpret the lease to provide for joint use by Barker’s and prospective tenants of all parking areas existing or to be constructed, that part of the judgment providing for undisturbed possession of “all of such area for vehicular parking by plaintiff” accords to plaintiff the right to prohibit the use of the parking area by prospective joint tenants in buildings to be constructed on the Meltzer-owned property contiguous to the Barker’s building and parking area. The lease clearly did not accord to plaintiff this undisturbed possession. Accordingly, we delete from the judgment the aforementioned paragraph which makes reference to plaintiff’s peaceful possession of the parking area. As amended, the judgment is affirmed.

AMENDED AND AFFIRMED.

Appendix to follow.
*297 APPENDIX 1

. See Appendix I. This figure is the “Exhibit ‘B’ ” referred to in Article I of the lease, infra. We have superimposed the labels “Proposed 9,000 Square Foot Construction” and “Vacant Land Owned by Meltzer” upon the exhibit.

. The lease provided for a term of 22 years.

. During trial, counsel stipulated that the Jefferson Parish zoning code requires one parking space for each 250 square feet of gross floor area of the building constructed. At present, there are 384 parking slots available for Barker’s. The store building occupies, according to Meltzer, approximately 65,000 square feet. With this excessive number of parking spaces, the 9,000-square-foot building proposed for construction in the parking lot area would meet code requirements for both the existing Barker's building and the proposéd structure.