390 So.2d 527 (1980)
J. WEINGARTEN, INC., Plaintiff-Appellant,
v.
NORTHGATE MALL, INC., and Pickens Bond Construction Company, Defendants-Appellees.
No. 7803.
Court of Appeal of Louisiana, Third Circuit.
October 8, 1980.
Rehearing Denied December 1, 1980.
*528 Davidson, Meaux, Sonnier & Roy, Candice Hattan, Lafayette, for plaintiff-appellant.
Onebane, Donahoe, Bernard, Tarien, Diaz, McNamara & Abell, Randall C. Songy, Lafayette, for defendants-appellees.
Before CULPEPPER, DOMENGEAUX and CUTRER, JJ.
DOMENGEAUX, Judge.
This is a suit for permanent injunction brought against the developer of Northgate Mall in Lafayette, Louisiana, by J. Weingarten, Inc., one of the mall's tenants, in an effort to halt construction of a then proposed (but now completed) addition to the mall. Plaintiff claimed this proposed addition violated the lease agreement between plaintiff and Northgate Mall, Inc., defendant, causing irreparable harm to plaintiff's business, and entitling plaintiff to injunctive relief.

FACTS
On February 9, 1967, Northgate Shopping Center, Inc. leased to Northgate Mall, Inc. (one of the defendants herein[1]), approximately 35 acres of land in Lafayette, Louisiana, for the purpose of constructing a completely covered shopping center called, appropriately, the Northgate Mall. Shortly thereafter, defendant constructed the mall and paved the parking area partially surrounding the mall.
On June 27, 1968, defendant leased part of the building and the entire parking lot to J. Weingarten, Inc., the plaintiff.[2]
Approximately 10 years later, in early 1978, Northgate Mall, Inc. began planning to expand the mall. To this end, several plats were prepared incorporating the proposed *529 addition onto the then existing building. The proposed expansion increased by more than 100,000 square feet the leasable floor area of the building.
Plaintiff was generally aware of defendant's proposed expansion project. However, plaintiff felt that defendant's project exceeded the area allowed for future expansion by the contract. Coincidentally, plaintiff had considered remodeling and/or expanding its own store within the mall. Knowing, however, that it (plaintiff) had no contractual right to expand,[3] plaintiff attempted to negotiate its approval of defendant's unauthorized expansion in return for an agreement by defendant that it (defendant) would expand Weingarten's at the same time that it expanded the mall. Prior to the erecting of a construction fence (in February of 1979) around the entire expansion area, which was adjacent to that part of the mall occupied by Weingarten's grocery store, no agreement of any sort was ever reduced to writing, as was expressly required by Article 31 of the lease:
"ARTICLE XXXI
This instrument constitutes the entire agreement between Landlord and Tenant; no prior written or prior or contemporaneous oral promises or representations shall be binding. This lease shall not be amended or changed except by written instrument signed by both parties."
Weingarten filed this injunction suit on March 1, 1979, only days after it became aware that actual construction had begun, and on that date a temporary restraining order was issued by the trial judge halting construction. A hearing was held on March 19, 1979, after which the district judge dismissed the temporary restraining order and denied the request for preliminary injunction. The court found that Weingarten's had not shown that it would suffer irreparable harm if the preliminary injunction was not granted. The hearing was specifically limited to a consideration of whether the temporary restraining order had been wrongfully obtained, and whether or not a preliminary injunction should be granted or denied. All other issues were to be decided after a complete hearing on the merits of the permanent injunction could be held. No appeal was taken from this interlocutory judgment.[4]
After the temporary restraining order was dismissed, construction was resumed and the addition was substantially completed by the time the hearing on the merits of the permanent injunction was conducted. After this second hearing, held October 25th and 26th, 1979, the trial court ruled:
(1) Defendants were not entitled to damages and attorney's fees (which Northgate Mall had claimed on the grounds that the temporary restraining order was wrongfully obtained);
(2) Plaintiff had again failed to prove that irreparable harm would result if the injunction was not granted;
(3) Public policy prohibited parties from contractually establishing a right to injunctive relief;
(4) Plaintiff was not estopped from trying to enforce the lease agreement existing between plaintiff and defendant; and
(5) Plaintiff did not have a servitude because it acquired its rights from one who was merely a lessee (Northgate Mall, Inc.) and who had no right to grant a servitude to plaintiff.[5]
*530 J. Weingarten, Inc. has appealed that judgment and argues that it is entitled to injunctive relief for any one of three reasons:
(1) Plaintiff acquired a bargained for right to enjoin violations of its parking rights without the necessity of proving inadequacy of legal remedies or irreparable harm;
(2) Plaintiff will suffer irreparable harm if the construction of the now completed addition is not removed;
(3) Plaintiff is entitled to injunctive relief as a matter of law under La.C.C.P. Article 3663(2) without the need to prove irreparable harm.
We hold that plaintiff is entitled to a permanent injunction ordering the removal of that portion of the expansion which is in violation of the lease agreement. Before elaborating on our decision to reverse the District Court's judgment, we will briefly dispose of defendant's argument that the doctrine of equitable estoppel applies.

EQUITABLE ESTOPPEL
Defendant argues at length that plaintiff should be barred from asserting its contractual rights against defendant because defendant justifiably relied, to its detriment, upon plaintiff's apparent acquiescence to defendant's proposed 100,000 square foot expansion of the mall. We have reviewed the evidence defendant cites in support of its argument. We do not agree with defendant that the defense of equitable estoppel applies. The trial court wrote:
"The Court further feels that with regard to the defense, the affirmative defense, of equitable estoppel urged by the defendants, defendants say that although they recognize that they were bound by certain provisions of the lease, they contend to this Court that because they [sic] were ongoing negotiations between the parties, that they were reasonably led to believe that it was okay, that Weingarten had no objection to the new expanded facilities. The Court takes recognition of the fact that Weingarten was interested in expanding its facility, and that, of course, there were negotiations that transpired between the two. I think this is customary and ordinary, particularly where Weingarten had reason to believe that there would be expansion. Now, the lease is very clear, as I read it. And, apparently, from the testimony, that there is no way that Weingarten would have bound itself to an expansion, unless reducing that agreement to writing. You know, when you're dealing with millions of dollars, I think it's extremely bad business to make any sort of commitment that is not reduced to writing, and certainly, with the battery of attorneys that both of these corporations have on each side, I think it would be an absurd conclusion for this Court to make that the defendants were reasonable in their reliance upon preliminary negotiations between the parties, and therefore, I find that that defense is not a good one." (Emphasis added).
We completely agree with the trial court that defendant's reliance upon preliminary negotiations did not constitute such reliance as would make the defense of equitable estoppel available.

PERMANENT INJUNCTION
Plaintiff has charged defendant with violating the following provisions of the lease agreement:
"ARTICLE II
* * * * * *
C. .... No building shall be erected or permitted in the Shopping Center other than in the locations shown as buildings on Exhibit `A' and all remaining areas shall be improved as parking area, except that Landlord shall have the right to erect a department store in the area outlined on Exhibit `A' by a dotted line designated `future dept. store' and shall *531 also have the right to erect a theatre in the location shown on Exhibit `A' outlined by a dotted line and designated `prop. theatre'. Except for such department store area and theatre area, all space shown on Exhibit `A' as `parking' shall be used exclusively as a parking area .....

* * * * * *
ARTICLE X
A. It is a condition of Tenant's liability hereunder that at the commencement of the lease and at all times during the term of the lease, there will be paved parking in the Shopping Center of sufficient size such that there will be 6 car parking spaces for each 1,000 square feet of floor area (counting all floors within all buildings) within the shopping center; each such car parking space to be not less than 9 ft. in width by 18 ft. in length (the layout of such spaces to be as shown on Exhibit A). Landlord will maintain the surface of the parking area and driveways shown on Exhibit `A' in a smooth and readily traversible condition at all times during the term of this lease and any extension thereof, and Landlord will promptly clean and remove ice, snow, debris and trash from such parking area and other common areas in the Shopping Center.
Landlord will not change the parking area or stores in the Shopping Center as shown on Exhibit `A' during the term of this lease or any extension thereof by reduction in size of said parking area or by construction of new stores or by expansion of or addition to stores shown on Exhibit `A', (except in the area, if any, specifically designated as `future building area' on Exhibit A) .....
* * * * * *
D. Tenant is hereby granted an irrevocable non-exclusive easement during the term of this lease and any extension thereof over and across all parking areas in the Shopping Center as shown on Exhibit `A' and the driveways, walks, roadways, and streets within the Shopping Center leading to such parking areas for pedestrian and vehicular access to the leased premises so that Tenant, its agents, servants, customers, invitees and licensees shall have rights of ingress to the leased premises and egress from the leased premises over and across all parking area to the Shopping Center as shown on Exhibit `A' to and from the dedicated streets bordering the said Shopping Center, and rights to park upon all such parking area. Landlord covenants that Tenant at all times will have adequate and unobstructed rights of ingress and egress between the building constituting the leased premises and all loading platforms thereon and the streets, driveways, walks and alleys within the Shopping Center. The benefits of the aforesaid easement shall run with and bind the land affected thereby, and Tenant shall have the right to obtain an injunction specifically enforcing such rights and interests without the necessity of proving inadequacy of legal remedies or irreparable harm." (Emphasis added).
The Exhibit "A" referred to in the lease is a plat of the mall drafted in 1967 which was attached to and formed part of the agreement. A facsimile of the important portion of that plat has been reproduced as part of this opinion (see Figure 1) to facilitate the reader's understanding of the facts. Note particularly the two areas outlined by dotted lines and designated "FUTURE DEPT. STORE" and "FUTURE THEATRE". Contrast Figure 1 with Figure 2, a facsimile of the plat showing the relevant portion of the mall after completion of the addition. (Neither figure is drawn to scale but the distances and areas represented thereon are accurate).
*532 

After reading the contract, especially the above quoted portions, and studying the plats, we find that defendant has breached the contract. The facts permit no other conclusion, and defendant acknowledged its breach during oral arguments.
*533 Particularly, the defendant breached its contract in the following respects:
Whereas the original lease allowed defendant to construct an additional 39,375 square feet of building area,[6] defendant added over 100,000 square feet-more than twice the area allowed for future expansion-without ever securing plaintiff's written permission to derogate from the terms of the Weingarten lease. By so expanding, defendant destroyed or displaced a considerable number of parking spaces over which plaintiff held non-exclusive rights and which defendant specifically agreed would be used only as a parking area (see Article II of the lease agreement). Defendant's encroachment further violated the lease by reducing the parking ratio from 5.7 parking spaces per 1,000 square feet of leasable floor area to roughly 5.0 spaces per 1,000 square feet.[7]
While the trial judge recognized that the contract had been breached, she did not grant the permanent injunction principally because she held that it was against public policy to permit parties to contract for injunctive relief. The trial court said:
"The plaintiff likewise argues to the Court that there was a contract provision which gave the plaintiff the right under contract to injunctive relief. The Court has relied in its ruling on that on the case of Termplan Arabi, Inc. v. Frank Carollo, cited at 299 So.2d 831. That issue was presented before the Court in that case, and there was a contract whereby the parties in that case either had an option of injunctive relief, or liquidated damages in the amount of two thousand ($2,000.00) dollars. The Court in the Termplan case held that, apparently, by fixing the liquidated damages, that it was some sort of confession, so to speak, that any breach of contract could be compensated by money, and therefore, no irreparable injury could result. The plaintiff contends to this Court that in this instance there was no liquidated damages provided for in their lease, and that therefore, this Court should grant injunctive relief. I think that the Termplan Court, which was the 4th Circuit-citing Article 3601, Louisiana Code of Civil Procedure: `An injunction shall issue in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in any other cases specifically provided by law. Clearly, irreparable injury is the sine qua non for an applicant to obtain injunctive relief, absent some specific statute. Parties cannot, by a contract, bestow upon each other the right to injunctive relief where the essential conditions established by law do not exist.' Of course, the plaintiff argues that the law of the parties is the contract. This Court's feeling is quite otherwise. This is a harsh remedy, and probably the harshest remedy in our law books, and the Courts are held to very close scrutiny of injunctive relief. And I think it's contrary to public policy to permit parties to contract for injunctive relief, because in their business dealings, obviously, there is a leverage in negotiation, and because ultimately commerce and the rights of other people may be affected in the world of industry, commerce and economics. I think that the 4th Circuit is correct, and therefore, I will follow that decision, and will not give effect, lawful effect, to the provision of injunction cited in the lease." (Emphasis added).
We think the trial court erred in finding that it is contrary to public policy to *534 permit parties to contract for injunctive relief. The case relied upon by the trial court does not support the trial court's ruling. In that case, Termplan Arabi, Inc. v. Carollo, 299 So.2d 831 (La.App. 4th Cir. 1974), the parties entered into a non-competition agreement which was part of an employment contract between the two. In the event the employee breached his promise after his employment was terminated, the employer was entitled to $2,000.00 as liquidated damages and injunctive relief or other relief available to the employer enjoining the former employee from continuing to engage in activities prohibited by the contract.[8] When the employee breached this contract provision, the employer sued for the $2,000.00 liquidated damages and sought injunctive relief at the same time. Although the employer later dropped his demand for $2,000.00 in liquidated damages and sought thereafter only injunctive relief, the Court held injunctive relief to be unavailable since the parties had agreed to a specified amount of money as liquidated damages.
While the Fourth Circuit did comment that "[p]arties cannot, by a contract, bestow upon each other the right to injunctive relief where the essential conditions established by law do not exist", the facts of that case did not require such a determination. All the court really held was that when a contract provides for injunctive relief and a sum certain in liquidated damages, the injunction is unavailable because the parties have agreed that the damage can be rectified by the payment of the liquidated damages.[9] The instant case may be easily distinguished because the contract did not provide for liquidated damages nor is plaintiff seeking damages. The sole remedy granted by the lease (and the only relief requested) is that of injunctive relief.
Neither the trial court nor Termplan offer compelling reasons to demonstrate how any public policy is served by denying parties the right to contract for injunctive relief. The trial court noted, without further discussion, that the rights of other people may be affected if such contractual provisions were upheld. Obviously, La.C.C. Article 11 is the source of this reasoning. Article 11 provides:
"Individuals can not by their conventions derogate from the force of laws made for the preservation of public order or good morals.
But in all cases in which it is not expressly or impliedly prohibited, they can renounce what the law has established in their favor, when the renunciation does not affect the rights of others, and is not contrary to the public good." (Emphasis added).
Yet the court failed to explain how the rights of other people may be affected by recognizing the clear intent of the parties. In the instant case, the defendant renounced what the law established in his favor: the requirement that he who seeks injunctive relief must first show that he will suffer irreparable harm or that he has no other adequate remedy at law. This renunciation in and of itself does not affect the rights of others. If the rights of others (namely, the new tenants) are affected, it is because defendant blatantly disregarded the terms of its own lease agreement with Weingarten when it executed lease agreements with the new tenants, and not because defendant agreed that plaintiff would be entitled to injunctive relief in the event that plaintiff's rights over the parking lot were infringed by defendant.
Both the trial court and the Court in Termplan believed one must prove irreparable injury before being granted a permanent injunction. With this conclusion we cannot concur. While proof of irreparable harm may be the sine qua non for injunctive relief in cases where a contract does *535 not dispense with such proof, the standard of irreparable harm should not be used if the parties explicitly agreed that injunctive relief is available without that proof.
Our holding does not bind a judge to grant the remedy of injunctive relief simply because the parties so contract; the party asking for the injunction must still prove his entitlement to that relief. A decision to deny injunctive relief, though, should be well supported in reason; it should not result if the parties knowingly and intelligently agreed to waive the requirement that irreparable harm or inadequacy of other legal remedies be proved and if the remedy of injunctive relief adequately safeguards or restores rights enjoyed by the party seeking relief.
After hearing the arguments and reading the excellent briefs prepared by the parties to this dispute, we find that Northgate Mall, Inc. affirmatively agreed to this provision and must have been aware of its potential ramifications. Moreover, we find that obtaining the right to injunctive relief was a very important objective of J. Weingarten, Inc. and is one of the few ways-indeed, perhaps the only way-that Weingarten was able to insure that its rights over the parking area would be protected.
While we recognize that the only loss likely to be felt by Weingarten is an economic one, we will not deprive it of injunctive relief for that reason. We feel the parties took cognizance of the problems encountered by mall tenants and landlords when confecting their contract. (Those problems are discussed below). Northgate Mall, Inc.'s bold and brazen breach of its contract with Weingarten is one the injunction clause was designed to prevent. Such a clear intent will not be circumvented by this Court merely because the breaching party-Northgate Mall, Inc.-may encounter economic hardship caused by the injunction.
Tenants like Weingarten in shopping malls encounter unique problems because of the shared parking arrangements inherent to most malls. None of the tenants acquire exclusive rights over any area of the parking lot; thus the tenants endeavor to insure that the entire shopping mall has a sufficient enough parking area to accommodate the needs of all the tenants. In part, the tenants' concern for adequate parking is lessened by inclusion of parking ratios in the leases. (As for instance, the requirement of six parking spaces per 1,000 square feet of leasable floor area found in Weingarten's lease). However, the tenants must have a meaningful way to protect their parking rights and ratios, if and when the landlord violates these rights by extra-contractual expansion of the leasable floor area of the mall.
The existence of a meaningful remedy is especially important if the damage done by reducing the parking area is incalculable or cannot be determined with any accuracy until several years have elapsed, in which case the mall developers (i.e. Northgate Mall, Inc.) can then argue that the tenant's (Weingarten's) declining sales figures are due to some cause other than the diminution in parking occasioned by the landlord's violation of the tenant's rights.[10] In such a case-and we find this to be one such case-a court should not substitute a remedy which may or may not negate the effects of the breach for a remedy specifically chosen by the parties.
The Courts of this state have not had the opportunity to deal extensively with this problem. However, one case with circumstances substantially similar to the one at bar is Barker's # 413 Corporation v. Meltzer, 346 So.2d 293 (La.App. 4th Cir. 1977). In that case, Meltzer, the lessor or landlord, constructed a 66,200 square foot building along Veterans Highway in New Orleans for occupancy by Barker's Department Store, the tenant. Meltzer also surfaced the area in front of the building to be used as a parking lot for Barker's. In Article I *536 of their lease, the parties agreed that "Lessor shall have the right to build additional rental space ....." During the term of the lease, Meltzer notified Barker's of his intention to construct a 9,000 square foot building in the parking lot area utilized by Barker's. After fruitless discussions between the parties, Barker's filed suit for injunction. The trial court ruled in Barker's favor and issued the injunction. The Fourth Circuit affirmed, holding that the lease provisions did not permit the lessor to construct additional rental space on the existing parking lot area. The Court conceded that the parties contemplated the building of additional rental space, but noted that lessor did not specifically reserve the right to build in the existing parking area. Instead, the Court felt the parties contemplated that the lessor reserved the right to build additional rental space on the vacant land next to Barker's, which vacant land was also owned by Meltzer and had not been leased to Barker's. The Court further decided that the parties intended for the parking area in front of Barker's to be utilized by the tenants and the customers of the buildings which were to be constructed on the vacant lot.
In Barker's # 413 Corporation v. Meltzer there was no contract provision granting Barker's the right to obtain injunctive relief. However, the Court granted injunctive relief without discussing whether Barker's would be irreparably harmed by the new construction or whether Barker's had no adequate remedy at law. The injunction was granted simply because the landlord's construction project constituted a breach of the lease.
A recent case out of the Second Circuit, Bossier Center, Inc. v. B & B Systems, Inc., 388 So.2d 826, No. 14,234 (La.App.1980), is also analogous to the instant case. There, plaintiff sold to a Mr. Patten a strip of land 20 feet wide by 176.7 feet long. The deed contained the following provision:
"Vendee agrees not to erect any structures without the written consent of the vendor."
Patten leased a sign location on his strip of land to B & B. B & B commenced construction of the sign without first having obtained approval of plaintiff, the vendor. Plaintiff then sued to enjoin construction of the sign. After trial, the judge granted the permanent injunction on the basis that prior approval of vendor was required by the deed before any structure could be erected. The Second Circuit affirmed but amended the judgment to order that the use limitation did not constitute a predial servitude nor any other form of covenant running with the land. The Court of Appeal said:
"The intervenor [Patten] personally obligated himself to erect no structures upon the premises without the consent of his vendor and he must comply with this use restriction."
The Court rejected the argument that the use restriction violated public policy and noted that our jurisprudence contains many decisions where restrictions upon use of property have been found valid and enforceable. Furthermore our brothers of the Second Circuit quoted, with apparent approval, a passage from Queensborough Land Company v. Cazeaux, 136 La. 724, 67 So. 641 (1915) stressing that the public policy of this state favors the fullest liberty of contract and the widest latitude possible in the right to dispose of one's property as one chooses "so long as no disposition is sought to be made contrary to good morals, public order or express law."
The Court also inquired whether plaintiff had unreasonably refused to consent to the sign and decided plaintiff's refusal to consent had not been unreasonable because the sign would "necessarily" create some view obstruction to plaintiff's property and "may well otherwise detract" from a small contemplated commercial complex. The Court granted the injunction without considering whether plaintiff would suffer irreparable injury and whether plaintiff had an adequate remedy at law. Nor did the Court consider whether the injunction was specifically authorized by law. Since the decision denied that the use restriction was either a building restriction or a predial servitude, the injunction must have been granted simply *537 because Patten and his lessee B & B (whose rights could be no greater than those of its lessor) breached their personal obligation not to erect any structure without the consent of the vendor.
Other jurisdictions have issued injunctions prohibiting shopping center landlords from encroaching upon parking rights granted to their tenants.
In Food Fair Stores, Inc. v. Jackson Heights Shopping Center, Inc., 55 Misc.2d 205, 284 N.Y.S.2d 814 (1967); aff'd 28 App. Div.2d 1207, 285 N.Y.S.2d 1009 (1967), a lease gave tenant a non-exclusive, non-revocable right to use of the parking space outlined on an attached plat. The lease also granted the tenant quiet possession and enjoyment of the parking area. The Court held that the owner of the shopping center did not have the right to build an additional building in the parking area and thereby reduce the capacity from 400 to 350 automobiles. Thus, the tenant was entitled to a permanent injunction prohibiting the construction of the building.
In Walgreen Co. v. American National Bank & Trust Company of Chicago, 4 Ill. App.3d 549, 281 N.E.2d 462 (1972), a lease gave the tenant Walgreen non-exclusive rights over a parking area which was to contain at least 150,000 square feet and was to provide parking for at least 400 automobiles. Village Green, the lessor, leased to Fotomat an area of the parking lot measuring 40 square feet which would displace three parking spaces. After construction of the small Fotomat building had begun, Walgreen sued to enjoin construction. The Court found the lease to Fotomat violated the Walgreen lease even though the parking lot still would exceed 150,000 square feet and would provide parking for over 400 cars despite the presence of the Fotomat building. The Court found that the parties intended to confine the sales facilities of the shopping center to those areas specifically set out or reserved in the plot plan. The area leased to Fotomat had not been so reserved. Thus, Walgreen was entitled to injunctive relief. The Illinois Court concluded that the deprivation of a property right, the elimination of parking spaces, and the potential disruption of travel (all of which occur on a grander scale in the instant case) constituted irreparable injury.
In Gray Drug Stores, Inc. v. Foto Fair International, Inc., 288 N.E.2d 341, 32 Ohio App.2d 71 (1971), the plaintiff and defendant entered into a lease agreement in 1961. Defendant was the developer of the Findlay Shopping Center. Plaintiff was one of the tenants. In 1969 defendant entered into a lease agreement with Foto Fair for the construction of a "kiosk" to sell, and receive for development, photographic film. The kiosk, a prefabricated carousel-style drive-in structure, was placed in the shopping center on an area designated, striped, and used for parking. Plaintiff asserted that defendant violated its rights to the parking area. Based on contract provisions very similar to the ones in the instant case wherein the parking area could not be reduced in size "except for such future additions to buildings and the `Future Building' as shown on Exhibit A", the Ohio Court of Appeal granted the permanent injunction.
The Kentucky Court of Appeal faced a situation similar to ours in W. T. Grant Company v. Indian Trail Trading Post, Inc., 423 S.W.2d 251 (Ky.1967). There, the lease contract provided that future buildings in the shopping center shall be "on no other portion of the area" than those marked as future building sites unless the tenant's written consent was obtained. The largest future building site contained slightly over 61,000 square feet in area. Indian Trail, the developer, had contracted with the Woolworth Company, without the written consent of W. T. Grant, to construct on this site a building containing 109,000 square feet. Construction continued during the course of litigation and the new building was completed by the time the Kentucky Court of Appeal rendered judgment. The Court said:
"Under this state of facts, the court properly could and would require so much of the building as lies outside the platted site to be removed." *538 However, W. T. Grant did not insist upon removal; it asked only that Indian Trail and Woolworth be enjoined from using that portion of the building which lay outside the boundary lines of the site, as shown on the plat.[11] The Court granted this limited injunction but felt this would not adequately cover the damage suffered by W. T. Grant. Thus, the Court held W. T. Grant should be allowed a trial upon its claim for damages.
Although a contractual right of injunction was not involved in any of the above cases, those cases support our decision to grant an injunction, because, under sets of circumstances virtually identical with the facts herein, injunctive relief was granted almost routinely; proof of irreparable harm or lack of other adequate remedy was not required. Injunctions, not damages, were requested and the various courts-including one in Louisiana-granted injunctive relief simply upon the showing that a landlord was infringing upon the tenant's parking rights by converting contractually protected parking space into leasable floor area.
Additionally, we believe the facts show that Weingarten did not have an adequate remedy at law once the contract was breached. We intimated such a conclusion in footnote 10. Indeed, the lack of an adequate remedy may well be the underlying reason that injunctions were granted in the cases discussed. With calculation of pecuniary damages virtually impossible, issuance of an injunction to compel errant parties to comply with their contractual obligations is a practical and viable form of relief.
The Courts of this state have recognized that the lack of an adequate remedy at law is synonymous with irreparable harm and entitles one to injunctive relief. Greenberg v. DeSalvo, 254 La. 1019, 229 So.2d 83 (1969); Caffery v. Powell, 320 So.2d 223 (La.App. 3rd Cir. 1975). Thus, Weingarten would, for that reason also, be entitled to injunctive relief.[12]
Our decision may seem harsh because the mall addition is complete and must now be partially removed. The decision to grant an injunction would be much more palatable to this Court if the addition was still in the early stages of construction. However, we note that Northgate Mall, Inc. knowingly placed itself in the precarious predicament it is now in by proceeding with its construction project after court proceedings to halt and prohibit the construction had been initiated by Weingarten. This Court will not now implicitly condone such a flagrant and calculated disregard for contract by rescuing Northgate Mall, Inc. at the expense of its innocent victim, J. Weingarten, Inc.[13]
For the above and foregoing reasons, the judgment of the district court dismissing plaintiff's request for a permanent injunction is reversed. It is Ordered that there be judgment herein in favor of plaintiff, J. Weingarten, Inc., and against defendant, Northgate Mall, Inc., ordering removal, within six months of the date this judgment becomes final, of that portion of the new addition to Northgate Mall adjacent to Weingarten's Supermarket which exceeds 39,375 square feet of building area.[14]
All costs are assessed against defendant, Northgate Mall, Inc.
REVERSED.
NOTES
[1] The other defendant, Pickens Bond Construction Company, is apparently no longer involved in these proceedings.
[2] Although plaintiff's lease granted it rights over the entire parking area, these rights were non-exclusive since other tenants of the mall enjoyed the same rights.
[3] While other tenants, J. C. Penney and Montgomery Ward, did have future expansion rights, Weingarten did not.
[4] Although La.C.C.P. Art. 3612 permits an appeal from a judgment relating to a preliminary injunction, the fact that Weingarten did not appeal is of no consequence since the parties contemplated a later, more complete hearing on the merits of the permanent injunction after which the aggrieved party could then perfect an appeal. Breland v. Edwards, 360 So.2d 250 (La.App. 1st Cir. 1978).
[5] This last ruling was made several months after the trial of the matter and was signed on January 11, 1980. The judgment was signed on January 16, 1980.
[6] This includes the 30,000 square foot area designated as "Future Dept. Store" and 9,375 square feet designated as "Future Theatre". The theatre was eventually built across Castille Street from the main shopping mall, and the area designated as "FUTURE THEATRE" was converted into parking. Therefore, we will allow Northgate Mall, Inc. to use that area as part of the allowable expansion area. Not included is 40,000 square feet of future building area earmarked as an expansion for Montgomery Ward, and 1,692 square feet dedicated as a future expansion project for J. C. Penney.
[7] Although the lease called for 6.0 spaces per 1,000 square feet, that ratio had never been met. Weingarten had apparently acquiesced to the ratio of about 5.7 spaces per 1,000 square feet which existed before the expansion reduced the ratio even further.
[8] The trial court incorrectly stated that the Termplan contract provided optional remedies of liquidated damages or injunctive relief. The plain language of that contract contemplated a cumulation of remedies of injunctive relief and liquidated damages.
[9] We note that none of the cases relied upon by Termplan held it to be against public policy for parties to contract for injunctive relief.
[10] We are not suggesting that Weingarten need show that its sales figures declined after the breach. Even if those figures had increased after the breach, it would be virtually impossible to prove that its sales would not have been even greater had the landlord expanded only to the extent permitted by its contract.
[11] In our case, defendant has argued in brief that the only relief sought by plaintiff "is an injunction ordering removal of the construction fence and preventing further construction activities." The evidence establishes that the trial on the merits of the permanent injunction contemplated removal of that part of the new edifice which offended the lease.
[12] In light of our decision, we pretermit a determination of whether the lease created a predial servitude or whether La.C.C.P. Art. 3663(2) is applicable to these facts.
[13] We remain hopeful that the parties can agree to some other solution which would render compliance with this injunction unnecessary.
[14] "Building area" includes both leasable floor area and mall area.