404 So.2d 896 (1981)
J. WEINGARTEN, INC.
v.
NORTHGATE MALL, INC. and Pickens Bond Construction Company.
No. 80-C-2991.
Supreme Court of Louisiana.
September 8, 1981.
Concurring Opinion October 16, 1981.
Rehearing Denied October 21, 1981.
*897 Randall C. Songy and John G. Torian, III, of Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Lafayette, for defendant-applicant.
L. Lane Roy and M. Candice Hattan, Lafayette, for plaintiff-respondent.
DENNIS, Justice.
We are called upon to decide whether, under the circumstances of this case, a court should specifically enforce a lease by ordering the destruction of the major part of a $4 million building which a shopping center developer erected in an area reserved to its tenant for customer parking. The trial court refused to order the building razed, but the court of appeal reversed, requiring that approximately 60% of the building be torn down and removed within six months of the effective date of its judgment. We reserve the judgment of the court of appeal. Although specific performance is the preferred remedy for breach of a contract it may be withheld by the court when specific relief is impossible, when the inconvenience or cost of performing is greatly disproportionate to the damages caused, when the obligee has no real interest in receiving performance, or when the latter would have a substantial negative effect on the interests of third parties. In view of the great disparity between the cost of specific relief and the damages caused by the contractual breach, the magnitude of the economic and energy waste that would result from the building's destruction, the substantial hardship which would be imposed on individuals who are not parties to the contract or to this litigation, and the potential negative effect upon the community, the circumstances and nature of this case do not permit specific performance. Accordingly, the case will be remanded to the trial court for proceedings necessary to the assessment and award of any damages to which the plaintiff may be entitled.
The defendant, Northgate Mall, Inc., in 1967 and subsequently, developed an enclosed shopping mall on approximately 35 acres of land in Lafayette, Louisiana. In 1968, the defendant subleased space in the mall to the plaintiff, J. Weingarten, Inc., for the operation of a grocery store.
In early 1978, the defendant began planning to renovate and expand the mall to counter expected competition from a new mall to be built in Lafayette. The plaintiff, upon learning of the expansion plans, informed the defendant that it wished to remodel or enlarge its own store in conjunction with the defendant's activities. Later *898 the plaintiff sent rough plans of its enlargement to the defendant for approval. The plans would have allowed the plaintiff to extend its store front fifty feet into the parking lot adding roughly 7400 additional square feet of building area. Under the lease, the plaintiff had no contractual right to expand. The defendant's right to expand was limited to roughly 40,000 square feet, but it proposed to add slightly over 100,000 square feet. Therefore, consent of both parties was necessary under the lease to permit either party's proposed expansion. However, no written modification ever resulted from their preliminary negotiations.
In February, 1979, the defendant erected a construction fence and began moving construction equipment and material onto the job site. The plaintiff alerted the defendant that it considered the defendant's activities a breach of contract and that injunctive relief would be sought if such activities did not cease. Last minute negotiations between the parties were unsuccessful, and the plaintiff filed suit on March 1, 1979 seeking preliminary and permanent injunctive relief.
Pursuant to plaintiff's petition, the trial court issued a temporary restraining order prohibiting further construction activities and continued the order until March 19, 1979 when a hearing was held on plaintiff's motion to dissolve the restraining order. The trial court denied the preliminary injunction and dissolved the temporary restraining order based on its finding that Weingarten failed to show that it would sustain irreparable damage without injunctive relief. Realizing the great costs attendant to the delay of a multi-million dollar construction project, the trial court pledged itself to speedy action in the case and encouraged the plaintiff to appeal the correctness of its ruling. The plaintiff did not take an appeal as a matter of right, see La. C.C.P. art. 3612, or apply for supervisory writs. See La. C.C.P. art. 2201. The trial on the merits of the petition for a permanent injunction was not held until October 25 and 26, 1979. By this time the $4 million expansion project was virtually complete and the new stores therein were open for business.
After the trial on the permanent injunction, the trial court reaffirmed its earlier finding that the plaintiff had not demonstrated that it would be irreparably harmed and could be adequately compensated monetarily. The court refused to enforce specifically a provision in the lease stipulating that an injunction to enforce Weingarten's rights to egress and passage over the parking area occupied by the new building could be obtained without the necessity of showing irreparable harm or the inadequacy of damages. The trial court concluded the agreed remedy provision was against public policy relying on Termplan Arabi, Inc. v. Carollo, 299 So.2d 831 (La.App. 4th Cir.), writ denied 302 So.2d 29 (La. 1974).
The court of appeal reversed the trial court, holding that the plaintiff was entitled to permanent injunctive relief because the agreed remedy provision was valid and because the plaintiff was irreparably harmed. J. Weingarten, Inc. v. Northgate Mall, Inc., 390 So.2d 527 (La.App.3d Cir. 1980). We granted defendant's application to consider the appropriateness of specific performance in this case. 396 So.2d 1326 (La. 1981).
Northgate agreed not to erect any additional buildings in the parking area of the shopping center except within the space shown on a plat attached to the lease designated as sites for future department store and a proposed theater. The defendant also promised to maintain a ratio of six car parking spaces for each 1,000 feet of floor space in the shopping center. It further agreed that its tenant, Weingarten, would have the right to an "irrevocable non-exclusive easement" over all parking areas shown on the plat attached to the lease. In connection with the "easement," the lease provided that Weingarten "shall have the right to obtain an injunction specifically enforcing such rights and interests without the necessity of proving inadequacy of legal remedies or irreparable harm."
We concur in the court of appeal's findings that Northgate breached each of the *899 contractual provisions. Whereas the lease reserved a 39,375 square foot area for future expansion, Northgate's new building consumed over 100,000 square feet, covering part of the area reserved for customer parking and reducing the parking ratio from 5.7 spaces per 1000 square feet, in which Weingarten had acquiesced, to 5.0 spaces per 1000 square feet. However, we disagree with the court of appeal finding that the plaintiff had shown that it would be irreparably injured by the breaches of contract. The evidence fully supports the trial judge's determination that plaintiff failed to demonstrate that its injury would be irreparable or insusceptible to adequate compensation.
The decisive issue presented by the breaches of contract is whether Weingarten is entitled to the substantive right of specific performance under the circumstances of this case. Specific performance may be enforced by the extraordinary remedy of injunction, among other procedural methods.[1] It is self-evident, however, that unless Weingarten has a substantive right to specifically enforce the obligation, neither an injunction nor any other procedural remedy may be used.[2]
Plaintiff Weingarten has asked specific performance of defendant Northgate's obligation not to do somethingnamely, not to infringe on plaintiff's contractual rights over areas reserved for parking by the lease.[3] Civil Code articles 1926 through 1929 govern the enforcement of obligations to do, or not to do.
Articles 1926 and 1929 provide:
Art. 1926. On the breach of any obligation to do, or not to do, the obligee is entitled either to damages, or, in cases which permit it, to a specific performance of the contract, at his option, or he may require the dissolution of the contract, and in all these cases damages may be given where they have accrued, according to the rules established in the following section.
Art. 1927. In ordinary cases, the breach of such a contract entitles the party aggrieved only to damages, but where this would be an inadequate compensation, and the party has the power of performing the contract, he may be constrained to a specific performance by means prescribed in the laws which regulate the practice of the courts.
Art. 1928. The obligee may require that any thing which has been done in violation *900 of a contract, may be undone, if the nature of the cause will permit, and that things be restored to the situation in which they were before the act complained of was done, and the court may order this to be effected by its officers, or authorize the injured party to do it himself at the expense of the other, and may also add damages, if the justice of the case require it.
Art. 1929. If the obligation be not to do, the obligee may also demand that the obligor be restrained from doing any thing in contravention of it, in cases where he proves an attempt to do the act covenanted against.
Since they are not models of clarity, the articles are susceptible to more than one reasonable interpretation.
A literal reading of the codal language may lead one to conclude that the general rule, i.e., the one to be applied in ordinary cases, is that the breach of a contract entitles the party aggrieved only to damages; and specific performance may only be obtained where damages would be an inadequate compensation. Under this view, an obligee could only require a thing done in violation of the contract to be undone if the nature of the cause would permit, viz., in the exceptional case in which damages are an inadequate remedy. Such an interpretation is suspect, however, because of its common law overtones.
Eminent Louisiana civilian commentators have argued persuasively to the contrary that these articles of the code where designed to enhance the rank of specific performance over damages as a remedy for the nonperformance of obligations to do or not to do in a manner not expressed in the comparable French articles. 2 S. Litvinoff, Obligations, § 168 in 7 Louisiana Civil Law Treatise (1975); Comment, Louisiana Law of Specific Performance: Codal Provisions and Methods of Enforcement, 40 Tul.L.Rev. 340 (1966). In their view, several circumstances support such an interpretation of the code: Article 1926 was mistranslated from the French; it should read: "On the breach of any obligation to do, or not to do, the obligee is entitled either to damages, or, If the execution is possible, [rather than in cases which permit it] to specific performance of the contract ...." [emphasis added] S. Litvinoff, Obligations, § 168 in 7 Louisiana Civil Law Treatise 310-315 (1975); Comment, Louisiana Law of Specific Performance: Codal Provisions and Methods of Enforcement, 40 Tul.L.Rev. 340, 343-345 (1966). Article 1927's restriction of specific performance to cases where damages would be "inadequate compensation" is consistent with the idea that recovery of damages is never an adequate remedy when specific performance is possible. S. Litvinoff p. 312; Comment, 40 Tul.L.Rev. p. 344. Article 1927's provision that, in "ordinary cases," a breach of contract entitles the creditor "only to damages," only implies a reference to nemo praecise cogit ad factum, that is, only damages should be granted when specific performance would require a violation of the obligor's freedom. S. Litvinoff, p. 313. Article 1928, which allows the obligee to require that anything which has been done in violation of a contract, "may be undone, if the nature of the cause will permit," shows greater care for the procedural aspects of the remedy of specific performance than does its French equivalent. S. Litvinoff, p. 313.
We agree with the distinguished doctrinal writers that Articles 1926 through 1929 were intended to give first rank to the obligee's right to performance in specific form, consistently with other provisions of the Code. See 2 S. Litvinoff, Obligations, § 168, n. 77. Therefore, we reject the common law view that the obligee must first clear the inadequacy of damage-irreparable injury hurdle before invoking the remedy.[4]
*901 A reading of the articles as a whole, however, implies that courts are empowered to withhold specific performance in some exceptional cases even when specific performance is possible. The phrases, "if the nature of the cause will permit" and "in ordinary cases," suggest a reference to a traditional civilian concept. The civil law systems, i.e., those descended from Roman law, have by and large proceeded on the premise that specific redress should be ordered whenever possible, unless disadvantages of the remedy outweigh its advantages. Farnsworth, Legal Remedies for Breach of Contract, 70 Columbia L.Rev. 1145 (1970). The main reservations have been for cases where specific relief is impossible, would involve disproportionate cost, would introduce compulsion into close personal relationships or compel the expression of special forms of artistic or intellectual creativity. Dawson, Specific Performance in France and Germany, 57 Mich.L.Rev. 495, 520 (1959). Professor Litvinoff has described the French jurisprudence as allowing courts to deny specific performance whenever the inconvenience of such forced execution would exceed the advantage, as when the cost of performing in kind is disproportionate to the actual damage caused, or when it is no longer in the creditor's interest, or when it would have a negative effect upon the interest of third parties. 2 Litvinoff, Obligations, § 166; See also, 2 M. Planiol, Civil Law Treatise pt. 1, no. 171A at 103 (11th ed. La. St. L. Inst. trans. 1959); Szladits, The Concept of Specific Performance in Civil Law, 4 Am.J. Comp.L. 208, 217 (1955).[5]
For the foregoing reasons, we conclude that the legislative aim of the redactors of the code was to institute the right to specific performance as an obligee's remedy for breach of contract except when it is impossible, greatly disproportionate in cost to the actual damage caused, no longer in the creditor's interest, or of substantial negative effect upon the interests of third parties.[6] Applying this interpretation to the present case, we conclude that its nature will not permit specific performance.
The evidence clearly reflects that that the cost of tearing down most of the $4 million building and doing incalculable damage to the remainder of the shopping center greatly outweighs any actual damage caused to the plaintiff. It is dubious that the devastation of such a building in a shopping center built with the hope of competing with a neighboring market complex is in Weingarten's real interest. It is evident that the third persons not party to the contract or to this lawsuit would be negatively affected. Shopping center tenants in the new building would lose their store space and risk losing their investments. H.J. Wilson Company, which occupies over 63,000 square feet of the building, would be particularly disadvantaged. The owners of the land and John Hancock Mutual Life Insurance Company, whose long term loan is secured by a mortgage on the shopping center and pledges of the leases of the five major tenants, would suffer a substantial negative effect. Although perhaps not controlling, additional considerations weighing *902 against specific performance and its consequent destruction of a major commercial building are the potential negative effects upon the community in the form of economic waste, energy dissipation, and possible urban blight.
Although the contractual provisions involved here cannot be specifically enforced under the circumstances of this case, we hold that they could have been under different conditions. Indeed, unless exceptional conditions prevail as in this case anything which has been done in violation of the contract may be undone, including the destruction of a building. Moreover, plaintiff is not without a remedy because it is entitled to be compensated fully in damages for any loss it sustains as a result of the breach of contract. Because the record presently does not provide an adequate basis for the assessment of damages, however, the case will be remanded to the trial court for that purpose.
REVERSED AND REMANDED.
WATSON and MARCUS, JJ., concur.
LEMMON, J., concurs and assigns reasons.
LEMMON, Justice, concurring.
When construction began, Weingarten sought to enjoin Northgate's blatant violation of the contract, and injunctive relief should have been granted. When preliminary injunctive relief was denied, Weingarten did not seek review of that ruling.
After construction was completed, the permanent injunction was tried on the merits. Of course, it was impossible at that point to prevent construction, and Weingarten's only relief was to undo the contractual violation by requiring removal of the building. By this time, however, the rights of third parties had become involved, such as the landowners and the mortgage holders (as well as new lessees, by the time the matter reached this court). Although Northgate's breach was no less culpable, the court's weighing process in determining the appropriate remedy was complicated by the involvement of the rights of innocent third parties.
At this point in the litigation I agree with the majority's analysis. Northgate's trampling on other parties' rights should have been halted earlier, when all of the equities favored Weingarten. Because of inherent flaws in the judicial process Weingarten must now obtain its relief through an award of damages.
NOTES
[1] A judgment may also be issued directing a party to perform a specific act. When the party so adjudged fails to perform, the judgment may be enforced by various procedural methods including the use of distringas, an assessment for damages, and punishment for contemptall as authorized by La.C.C.P. art. 2502. In addition, La.C.C.P. art. 2504 authorizes the court to direct performance by the sheriff or another person appointed by the court, at the cost of the disobedient party. See Comment, 40 Tul.L.Rev. 340, 352 (1966).
[2] A party seeking an injunction has no standing to sue unless he has a substantive right, which the law will recognize, assertable against a defendant having a substantial adverse interest. Terrebonne Parish Police Jury v. Mathrene, 405 So.2d 314 (La. 1981); La. Hotel-Motel Ass'n Inc. v. Parish of East Baton Rouge, 385 So.2d 1193 (La. 1980); League of Women Voters of N.O. v. City of New Orleans, 381 So.2d 441 (La. 1980); Abbott v. Parker, 259 La. 279, 249 So.2d 908 (1977); Stoddard v. City of New Orleans, 246 La. 417, 165 So.2d 9 (1964). Cf., Moore, Federal Practice, § 65.17. Moreover, the injunction question appears entirely academic. If Weingarten is entitled to specific performance, its right may be enforced by other procedural methods even if an injunction is unavailable. See footnote 1, supra. Nevertheless, it should be noted that the court of appeal's conclusion that parties contractually may dispense with procedural requisites for an injunction is subject to serious question because of the effects it may have on court dockets and litigants in other cases. If Civil Code article 11 applies to public law with the same force as it does to private law, renunciation of an important rule of court, procedure may in fact be contrary to the public good. See Garro, Codification Technique and the Problem of Imperative and Suppletive Laws, 41 La.L.Rev. 1007, 1012-1015 (1981).
[3] We agree with the trial court that the lease does not confer a servitude to plaintiff since defendant-lessor is not the owner of the property. See La. C.C. arts. 697, 710-14; Hawthorne Oil & Gas Corp. v. Continental Oil Co., 368 So.2d 726, 737 (La.App. 3d Cir., rev'd on other grounds, 377 So.2d 285 (La. 1979)).
[4] For discussions distinguishing the civil and common law approaches to specific performance and critiques of Louisiana jurisprudence see: 2 S. Litvinoff, Obligations, §§ 162-171 in 7 Louisiana Civil Law Treatise (1975); Jackson, Specific Performance in Louisiana, Past and Future, in Essays in the Civil Law of Obligations 195 (J. Dainow ed. 1969); Jackson, Specific Performance of Contracts in Louisiana, 24 Tul.L.Rev. 401 (1950); Krassa, Interaction of Common Law and Latin Law: Enforcement of Specific Performance in Louisiana and Quebec, 21 Can. Bar Rev. 337 (1943); Comment, Louisiana Law of Specific Performance: Codal Provisions and Methods of Enforcement, 40 Tul.L. Rev. 340 (1966).
[5] Twentieth century French commentators argue that courts are justified in not granting specific performance only when it is materially or morally impossible. "Moral impossibility refers to a case `when satisfaction in nature can by the hardest be procured from the defendant, but at the price of an act of violence which would be scandalous. Colin & Capitant, Cours élémentaire de droit civil français II (3 e ed. 1921) p. 17ff.; Planiol & Ripert, Traité Pratique de droit civil français VII (1931) 69 f. f.'" Jackson, Specific Performance of Contracts in Louisiana, 24 Tul.L.Rev. 401, 415 (1950).
[6] Even when a valid agreed remedy provision such as stipulated damages is included in the parties' contract, the court retains some discretion to modify that provision when circumstances such as partial performance make the agreed remedy inappropriate or unjust. See, La.C.C. arts. 1934 (5), 2120, 2127; La.C.C.P. art. 2164; Comment, Judicial Modification of Penal ClausesA Survey of Recent Developments, 53 Tul.L.Rev. 523 (1979).