**CONOCO, INC.**

v.

**James G. WATT, Secretary of the Department of the Interior, et al.**

Civ. A. No. 82–3268.

United States District Court,
E.D. Louisiana.

Aug. 6, 1982.

J. Berry St. John, Jr., Liskow & Lewis, New Orleans, La., Bradley I. Raffle, Conoco, Inc., Houston, Tex., for plaintiff.

John Volz, U.S. Atty., E.D.La., New Orleans, La., William F. Baity, Asst. U.S. Atty., E.D.La., New Orleans, La., Larry Martin Corcoran, Dept. of Justice, Land and Natural Resources Div., Washington, D.C., for defendants.

HEEBE, Chief Judge.

This cause came on for hearing on August 3, 1982, on the application by the plaintiff, Conoco, Inc., for a temporary restraining order in a suit filed for declaratory and injunctive relief challenging two decisions by the Mineral Management Service (MMS) requiring Conoco to pay civil penalties totaling $353,000 for alleged violation of administrative orders governing oil and gas operations on the Outer Continental Shelf.

The Court, having carefully considered the complaint, the record, the memoranda submitted by the parties, the applicable law and the arguments of counsel, hereby GRANTS plaintiff's request to the extent that the plaintiff will not be required to comply with the order of the Reviewing Officers of the MMS to pay the sum of $173,000 to the United States Treasury by Friday, August 6, 1982, and $180,000 by August 10, 1982. However, in the interest

of maintaining the *status quo* until a hearing for preliminary and permanent injunction on the merits may be held, Conoco will be required to deposit the funds in the amount of $353,000 in the Registry of the Court pending further orders of this Court, and for the following reasons.

### REASONS

According to the complaint, Conoco is the lessee and designated Operator of Lease OCS–G 0128, Grand Isle Block 40, which lease was issued by the Department of the Interior (Interior) and affects a tract lying on the Outer Continental Shelf adjacent to the Eastern District of Louisiana.

On August 4, 1981, representatives of MMS arrived on Conoco's Grand Isle Block 40–G platform and began a routine inspection to ascertain whether Conoco was in compliance with the requirements of MMS regulations and OCS orders. These orders and regulations are directed toward insuring that safe conditions prevail on platforms being operated by oil and gas company lessees of the Outer Continental Shelf.

On August 4 and August 14, 1981, MMS inspectors gave Conoco Notice of Incidents of Non-compliance Detected and Actions Taken. The notices advised Conoco of three categories of violation of OCS Order No. 5 relating to the failure to test certain devices on the platform. It is undisputed that the violations were promptly corrected after notice was given. Notwithstanding this fact, after administrative hearings were held, two MMS Reviewing Officers assessed civil penalties against Conoco of $173,000 on July 8, 1982 and $180,000 on July 12, totaling $353,000 to be paid within thirty calendar days of each assessment. The first penalty was computed by multiplying the total number of days the company was in violation of the order by $1,000 per day; the second penalty was based on the number of days multiplied by $2,000 per day. Conoco alleges that the major portion of this total amount was for violations which occurred during the time period before the notice of violation was given to them.

The penalties which were assessed against Conoco were imposed pursuant to 30 C.F.R. § 250.80–2(a)(1), which provides in relevant part as follows:

Pursuant to Subsection 24(b) of the Act, any person who fails to comply with any . . . order issued under the Act, shall be liable for a civil penalty of not more than $10,000 for each day of continuance of such failure. The Director may assess, collect and compromise a civil penalty after notice of the failure and the passage of a reasonable period of time to allow for corrective action . . . .

Section 24(b) of the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. § 1350(b), which provides the statutory authority for the quoted regulation provides as follows:

(b) If any person fails to comply with . . . any regulation or order issued under this subchapter, after notice of such failure and expiration of any reasonable period allowed for corrective action, such person shall be liable for a civil penalty of not more than $10,000 for each day of the continuance of such failure. The Secretary may assess, collect, and compromise any such penalty. No penalty shall be assessed until the person charged with a violation has been given an opportunity for a hearing.

Conoco takes exception to the regulation promulgated pursuant to § 24(b) of the OCSLA on the grounds that it does not carry into effect the § 24(b) provision that liability accrues only after notice and opportunity for corrective action. Additionally, the company alleges that the regulation was unlawfully promulgated because at the time the proposed regulation was published and written comments were submitted by interested parties, no suggestion existed that civil penalties would be appropriate for violations that occurred before notice and opportunity for correction. According to Conoco, the regulation as it was finally promulgated deleted this condition and thus violated the requirements of the Administrative Procedure Act, 5 U.S.C. § 553(c). Conoco also challenges the Statement of

Basis and Purpose which is contained in the preamble to the final regulation as inadequate and indefinite. Conoco now brings this suit for injunctive relief on the grounds that the regulation under which the penalties are assessed is void 1) for being in direct conflict with the clear wording and intent of the statute and 2) for having been unlawfully promulgated.

The company concedes that it is entitled to administratively appeal to the Director of MMS from the decision of the Reviewing Officer pursuant to 30 C.F.R. § 250.80–1. However, pertinent MMS regulations require that a "party must submit payment of any assessed penalty ... even though an appeal is pending." 30 C.F.R. § 250.80–1(*o*)(3). The Interior has not provided that the Decisions of the Reviewing Officers assessing penalties are inoperative pending appeal. Consequently, the order to pay the penalty is a final agency action within the meaning of the APA, 5 U.S.C. § 704, and Interior regulations, 43 C.F.R. § 4.21. Conoco requested that the Director stay or suspend the obligation to pay the penalty pending appeal, and noted in its request that a negative response by Thursday, July 29, 1982, would be regarded as the request having been denied. As of this time, no stay has been granted, and therefore Conoco is obliged to pay penalties totaling $353,000, $173,000 due on August 6, 1982, and $180,000 due on August 10, 1982.

Conoco further argues that even if it were to ultimately prevail on the merits in its appeal, and the penalties are ordered refunded, no interest will be paid by the Department of the Interior on the penalty funds. The company assesses the amount of interest which will be lost as a result of this as approximately $44,125 per year.

As a consequence of the actions of MMS, Conoco has prayed for 1) an order setting aside the decision of the Reviewing Officers which assessed the penalties, 2) a declaratory judgment that penalties may not be assessed under OCSLA § 24(b) except where adequate notice and a reasonable time for correction has passed, and 3) injunctive relief in the nature of an order restraining

the collection of the $353,000 pending trial on the merits of the case, along with any other appropriate relief. Conoco seeks judicial relief in this Court prior to exhausting its remaining administrative remedies on the grounds that it challenges action contrary to a specific mandate of law.

In its opposition to Conoco's request, the government has raised several challenges prompting our careful consideration including 1) Conoco has not exhausted its administrative remedies, 2) the Interior did not misinterpret § 24(b) when constructing its regulation, 3) Conoco is guilty of laches in the delay which took place between the date the civil penalty regulation was published in final form (October 26, 1979) and the date it brought suit for declaratory relief (July 30, 1982), 4) Conoco's claim for interest which will be lost on the amount is speculative, and 5) Conoco cannot meet, in conjunction with and because of these other deficiencies, the established requirements for the granting of injunctive relief in federal courts.

■ After careful consideration of argument from both sides, however, we conclude that Conoco has sufficiently demonstrated it is entitled to an order mandating that the penalty funds be placed in the Registry of the Court rather than paid to the Department of the Interior pending a judicial trial on the merits of its claim for declaratory and injunctive relief. To that extent, we grant Conoco's motion, the arguments of the government notwithstanding.

■ In order for a preliminary injunction or a temporary restraining order to issue, the moving party must show that 1) he will suffer irreparable injury unless the injunction issues, 2) there is substantial likelihood that he will prevail on the merits, 3) the threatened injury to the movant outweighs whatever harm the injunction may cause opposing parties, and 4) the injunction, if issued, is in the public interest. *E.g. Barrett v. Roberts,* 551 F.2d 662, 665 (5th Cir. 1977); *see generally* Wright and Miller, 11 Federal Practice and Procedure, § 2948 (1973).

This Court has not yet had an opportunity to become fully familiar with the transcript, congressional debates and public comments surrounding both the enactment of 24(b) of the OCSLA and the promulgation of its derivative by the Department of the Interior. Therefore, any determination which we make at this time regarding the meaning of the statute is only for the purpose of deciding whether there is substantial likelihood that Conoco would prevail on the merits. However, our review of the legal briefs supplied by the parties, and most significantly our own careful reading of the statute, strongly suggests that its plain meaning is that Congress intended to allow the violators time for notice and opportunity for correction. Civil penalties, it appears to us, are to be assessed for violations which continue after the responsible party has been notified of the violation and has failed to correct it within any reasonable period allowed.

The first complete sentence of § 24(b) clearly provides that several conditions must be met before liability, a term understood by judges, lawyers and legislators to mean legally "bound" or "obligated," attaches. These conditions are that the person must fail to comply with an order or regulation under the subchapter, and that notice and a reasonable period for corrective action must pass. The government complains that this construction of the statute will require MMS to constantly "audit" the companies' procedures to prevent the latter from sitting back to wait for notice of violation before they exert effort to enforce the safety measure. Our reading of the transcript of the hearing held before the Reviewing Officers does not automatically support this belief. Moreover, regardless of our belief as to what *should* be the law with respect to enforcement of safety standards, in deciding Conoco's rights and obligations under the law, we must properly interpret and steadfastly enforce what it appears to us Congress intended in drafting the provision. At trial on the merits, the government may be able to come forward with greater support in the congressional record or other sources for its contention. As of now, it appears to us that the statute is clear and the little legislative history we have thus far uncovered supports Conoco's claim. Having so determined, at this juncture we find no need to comment on Conoco's allegations that the procedures used in publication and final promulgation of the Department of the Interior's regulation were in violation of the APA, 5 U.S.C. § 500, *et seq.*

■ If Conoco pays the penalty now, we have been told it will be able to file for a refund if it ultimately prevails on the merits of its claims.[1] However, no provision exists anywhere in the statute or the regulations for the payment of interest on funds wrongfully paid to the United States. Conoco estimates that on the $353,000 principal, it would otherwise accrue approximately $44,125 per year and that this constitutes irreparable injury. We can see no reason why the company should be compelled to suffer this economic loss when depositing the funds in the court's registry, principal and interest later to be distributed to the party who prevails on the merits, would effectively preserve the rights and be to the practical benefit of both the company and the government. Equity demands that the Court take such measures as will avoid the imposition of irreparable harm even where the harm involves monetary damages. *See Placid Oil Co. v. Dept. of Interior,* 491 F.Supp. 895 (N.D.Tex.1980); *and Eli Lilly and Co. v. Premo Pharmaceutical Labs,* 630 F.2d 120, 137 (3rd Cir.1980), especially where plaintiff's interest in escrowing funds with the court would also adequately protect defendant's interest. *Minto v. European-American Bank and Trust Company,* 442 F.Supp. 1034 (S.D.N.Y.1977).

Similarly, we cannot see how the government will be harmed by such an arrangement. Recognizing the need for effective

---

1. We note, however, that at the hearing held herein, this query was specifically addressed to counsel for the government, who candidly stated that a refund of the principal is not "guaranteed," but under the law as it now stands should be forthcoming.

enforcement of OCSLA regulations in this instance should give way to a compromise that will maintain the *status quo* until such time as the very important issue of the lawfulness of those regulations may be adequately addressed by this Court.

Although the government urges the Court to deny the complaint on the grounds that Conoco waited two and a half years before challenging the regulation it alleges to be unlawful, we do not see how this prejudices the government. Moreover, it is our understanding from the hearing held herein that Conoco's record with the Department of the Interior is very satisfactory and that this is the first instance in which the Secretary has imposed a liability and penalty on Conoco for violation of the safety regulations on this platform. It is understandable, therefore, that the issue was not raised earlier by Conoco, and in fact, was not raised at the time of notice when Conoco could not have known how the penalty would be assessed. Conoco, in its brief has pointed out that it took prompt corrective measures. Until the penalties and their total amount was made known, it had no real knowledge that the Secretary would construe the regulation to allow for the calculation of penalties based on violations occurring before Notice.

Additionally, we believe the public interest is served by fair dealings between the agencies of the government and individuals, both corporate and personal. The issues raised by this complaint are significant public questions which should be resolved without further undue delay. The compromise which the Court is ordering to be struck by placing the penalty funds in escrow so that it may have more time to fully devote its attention to the merits of the complaint is consistent with this interest.

Accordingly,

IT IS THE ORDER OF THE COURT that a Temporary Restraining Order be ISSUED herein in favor of Conoco and against the Secretary of the Interior, that Conoco be ORDERED to deposit $353,000, the total amount of the penalty, in the Registry of the Court, pending resolution of the matter in a hearing for preliminary and permanent injunction at a date to be set by the Court.