| CRITERIA | COMMENTS | MET | PARTIALLY MET | UNMET |
|---|---|---|---|---|
| 8) Student Services<br>The pupil personnel services provided for all students are balanced and comprehensive | | | | |
| 9) Financial Support<br>Evidence exists that the school can adequately sustain the educational program | | | | |

The **SUPERIOR OIL COMPANY**

v.

**TRANSCO ENERGY COMPANY, et al.**

**Civ. A. No. 84–2138 L.**

United States District Court,
W.D. Louisiana,
Lafayette-Opelousas Division.

Nov. 2, 1984.

Dan A. Spencer, Houston, Tex., for plaintiff.

Lawrence E. Donohoe, Jr., Edward C. Abell, Jr., Lafayette, La., Alfred H. Ebert, Taylor M. Hicks, Houston, Tex., for defendants.

## MEMORANDUM OPINION

DUHE, District Judge.

Plaintiff, Superior Oil Company, has moved that this Court amend its findings of fact and conclusions of law of September 20, 1984, denying Superior's rule for a preliminary injunction requiring defendants to comply with various contracts regarding the Vermilion Block 58 Field and West Cameron Block 498 Field on the Outer Continental Shelf of Louisiana.

The Court, having considered the arguments of all counsel, the pleadings and affidavits filed, and the evidence adduced at the hearing on September 14 and 15, 1984, finds that:

1. The Court reaffirms its original finding that among the prerequisites for the issuance of a preliminary injunction pursuant to F.R.C.P. 65 is a showing of irreparable injury before trial on the merits. *City of Meridian v. Algernon Blair, Inc.*, 721 F.2d 525 (5th Cir.1983). Other prerequisites are: (1) A substantial likelihood that plaintiff will prevail on the merits; (2) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant; and (3) that granting the preliminary injunction will not disserve the public interest. *Id.* at 527.

Plaintiff continues to assert that *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), and its progeny in the Fifth Circuit require the application of state law, even if inconsistent with Federal law, on the OCS. This is a misreading of *Huson*. Plaintiff cites the language of the Court in *Huson* where it was stated:

> "If Congress' goal was to provide a comprehensive and familiar body of law, it would defeat that goal to provide only certain aspects of the state personal injury remedy in Federal Court. A State time limitation upon a remedy is coordinated with the substance of the remedy and is no less applicable under the Lands Act." 404 U.S. at 103, 92 S.Ct. at 353–354.

In its very next paragraph, however, the Court declared:

> The application of Louisiana's Art. 3536 is, of course, *subject to the absence of "inconsistent" and applicable Federal law.* Id. (Emphasis supplied).

The Court went on to explain that there was no inconsistent Federal law in that situation, because the Lands Act expressly preempted any Federal common law of admiralty. Therefore, the doctrine of laches could not apply on the OCS. In the facts at bar, federal standards for the issuance of preliminary injunction do exist.

█ Accordingly, to the extent that Louisiana law on the question of the issuance of a preliminary injunction is inconsistent with the prerequisites established in *City of Meridian*, supra, it is inconsistent with Federal law and thus not applicable under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 et seq.

█ 2. The Court reaffirms its original finding that the issuance of a *preliminary* injunction in Louisiana requires a showing of irreparable injury. Louisiana Code of Civil Procedure Article 3601; *M. and A. Farms, Ltd. v. Town of Ville Platte*, 422 So.2d 708 (La.App. 3rd Cir.1982). While it is clear that the Louisiana Supreme Court

in *Weingarten v. Northgate Mall*, 404 So.2d 896 (La.1981), held that specific performance *after trial on the merits* is the preferred remedy in Louisiana, it is entirely another question whether *Weingarten* stands for the proposition that there need be no showing of irreparable harm before the issuance of a *preliminary injunction.* This Court thinks not.

3. Irreparable injury, however, may consist of the absence of an adequate remedy at law. *Placid Oil Company v. U.S. Dept. of Interior,* 491 F.Supp. 895 (D.C.Tex.1980); *Brown v. Chote,* 411 U.S. 452, 93 S.Ct. 1732, 36 L.Ed.2d 420 (1973). Plaintiff asserts that it will suffer irreparable injury because it will have no adequate remedy at law if it is forced to rescind its contracts because of its duty to mitigate damages.

The Louisiana Supreme Court established the guidelines for mitigation of damages in *Unverzagt v. Young Buildings, Inc.,* 252 La. 1091, 215 So.2d 823 (1968). In *Unverzagt,* the Court stated:

> Following breach, the nondefaulting party's damages will be measured as though he had acted *reasonably* in not enhancing the damages caused by the breach. To the extent that the nondefaulting party has not acted reasonably and has thereby failed to avoid certain consequences which are not claimed as damages, the party who is in default may show those consequences in reduction of damages. Therefore, if a *reasonably prudent person acting under the facts and circumstances in which the nondefaulting party found himself* would have minimized the claimed losses by entering into other contracts either with a third party or, in some jurisdictions, with the defaulting party, this fact may be shown in reduction of damages ... Id. 215 So.2d at 826 [emphasis in the original].

Plaintiff may indeed have a duty, in the facts at bar, to mitigate its damages by either seeking new pipeline transporters, or entering into defendants' special marketing programs. If that were the case, then plaintiff would be denied an adequate remedy at law at trial on the merits, i.e., specific performance. In such a situation plaintiff then would undoubtedly be entitled to a preliminary injunction (assuming the other prerequisites of *City of Meridian* were met). The threshold question, however, is whether plaintiff has met its burden of showing that its duty to mitigate extends to recission of the contracts or participation in defendants' special marketing programs. This Court concludes plaintiff has not met its burden in this regard.

Plaintiff also asserts that it will not have an adequate remedy at law—and thus will suffer irreparable harm—for consequential damages occasioned by defendants' breach of the contracts in question. Specifically, plaintiff contends that it will not have an adequate remedy at law at trial on the merits for: (1) lost by-products of natural gas production, specifically, crude oil and condensate; (2) a reduced rate of return on its investment and depreciation of its assets; and (3) increased operating expenses and overhead due to the extended life of the fields.

It is well-established in the Louisiana jurisprudence that an obligee can only recover for breach of a contract those damages that were foreseeable by the parties, i.e., the contract price. 2 Litvinoff, Obligations § 192 (Louisiana Civil Law Treatise, 1975); Louisiana Civil Code Article 1934(1); *Galloway v. Tenneco Oil Co.,* 313 So.2d 317 (La.App. 4th Cir.1975). However, if an obligor breached its obligation with an intent to defraud or in bad faith, the obligor is liable for all "immediate and direct consequences of the breach", in addition to the purchase price. La. Civil Code Article 1934 (2); Litvinoff at § 190–191; *Galloway,* supra.

Plaintiff has made a prima facia showing that defendants are materially breaching the contracts relative to the Vermilion Block 58 Field and the West Cameron Block 498 Field. The only question is whether such breach is in bad faith for purposes of La.Civil Code Article 1934.

In *Palombo v. Broussard,* 370 So.2d 216 (La.App. 3rd Cir.1979), the Court declared: " 'In its simplest form, bad faith means a breach of faith and willful failure to respond to plain obligations.' *Hernandez v. Employers Mutual Liability Insurance Company,* 346 F.2d 154 (5th Cir. 1965). 'Bad Faith ... a designed breach [of the contract] ... from some motive of interest or ill will.' " 370 So.2d at 220. This Court concludes defendants' conduct does constitute bad faith, for their breach of their obligations is unquestionably willful and springs from an intent to escape an adverse economic relationship with plaintiff.

Accordingly, at trial on the merits plaintiff will have not only a claim for the purchase price, but in addition will have a claim for the "direct and immediate" consequences of defendants' breach. The question thus becomes whether plaintiff's asserted consequential damages are "direct and immediate" and hence recoverable at trial on the merits.

### THE LOST BY–PRODUCTS: CRUDE OIL AND CONDENSATE

■ Plaintiff has established with relative certainty the amount of crude oil and condensate lost daily due to the decreased production of natural gas from the two fields in question (350 × $30/barrel or over $10,000 a day). These losses are a direct result from defendants' breach, and hence are recoverable at trial on the merits. Although plaintiff might have a duty to rescind its contract to mitigate these damages by finding other pipeline purchasers, plaintiff has not met its burden of establishing that a reasonably prudent operator in its position would in fact rescind to mitigate its damages. Indeed, it appears likely it would be imprudent to give up specific performance of the contract to buy and sell gas at the contract price to recover the price of by-products.

### REDUCED RATE OF RETURN/DEPRECIATION

Plaintiff asserts that as a result of defendants' breach it will suffer a reduction in the rate of return on its investments, and that the depreciation of plaintiff's assets associated with these contracts will have an adverse affect "on plaintiff's after tax income and cash flow available for further investment". Without answering the question of whether these are "direct" damages, this Court concludes plaintiff has not met its burden of establishing that indeed they will take place. No evidence has been offered.

### INCREASED OPERATING EXPENSES AND OVERHEAD DUE TO EXTENDED OPERATIONS OF THE FIELDS

Plaintiff asserts that defendants' breach has forced it to curtail production of its fields, and that as a result, the life of the fields will be extended, causing it to incur additional operating expenses and overhead, for which it has no adequate remedy at law.

■ It is clear that this Court is empowered to take such measures as necessary to avoid the imposition of irreparable harm to plaintiff through future economic losses for which no adequate remedy at law exists. *Conoco, Inc. v. Watt,* 559 F.Supp. 627 (1982); *Placid Oil Company,* supra. Nonetheless, it is plaintiff's burden to establish the likelihood of such future economic losses. In the facts at bar, plaintiff has not met that burden with requisite evidence. It would be speculative and conjectural for this Court to take judicial notice of plaintiff's claimed future economic losses, for there are other factors at work (e.g., other producers in the same fields) which make an extension of the operative life of the fields arguable. Plaintiff having failed to carry its burden of proving the likelihood of such damages, there is no need for this Court to determine whether such losses are "direct" or "remote", and thus if an adequate remedy at law at trial on the merits exists.

■ 4. Superior has failed to meet its burden of establishing the likelihood of its

suffering irreparable harm in the absence of a preliminary injunction. The facts that the equities of the case are on plaintiff's side, and that plaintiff is likely to prevail on the merits, are irrelevant, in the absence of a showing of irreparable harm. Accordingly, this Court is compelled to deny plaintiff's motion for a new trial and amended findings of fact and conclusions of law. The ruling of this Court of September 20, 1984, denying plaintiff's request for a preliminary injunction is reaffirmed.