Dear Mr. Burton,
Your opinion request has been forwarded to me for research and reply. You requested an opinion from the Attorney General's office regarding the following issues: (1) Whether the South Beauregard Water System, Inc. (the "Corporation") has a continuing obligation to transfer its assets to the Waterworks District No. 3 of Beauregard Parish (the "District") based on a tax election held on April 12, 1975 and (2) If no, whether the Corporation is a private non-profit corporation or a quasi-public non-profit entity.
Along with your request, you provided the following background information: On July 30, 1970, the Corporation was established as a non-profit corporation under La.R.S. 12:201, et seq. Initially, the Corporation was funded by loans from the Federal Housing Association ("FHA"), and the Corporation continued to receive additional loan-grants from FHA until 1988, when the last indebtedness was incurred.[1]
Although the Corporation was set up as a "corporation" in order to get funding to purchase equipment and build a water system, it has always been viewed as a waterworks system by the parish, for reasons more fully explained below. *Page 2 
On July 9, 1974, and due to the increased needs of the parish, the Beauregard Parish Police Jury established Waterworks District No. 3 of Beauregard Parish.[2] In addition, the purpose of establishing the District was to acquire the assets of the Corporation, thereby combining the two waterworks systems into one public system under the control of the District.
At the time that the District was created, the Beauregard Parish Police Jury Board appointed to the District, as Board members, the same Board members as that of the Corporation. As a result, the board meetings of both systems were, from that point forward, conducted at the same date, time and location. For that reason, the minutes of the District's meetings included the concurrence of the Corporation's board members to sell its assets to the District.
Most importantly, the financing for the acquisition of the Corporation's assets and expansions thereto was procured by a ten (10) year mill property tax that was voted on and approved by the electorate on April 12, 1975, and was renewed in 1985 for another ten (10) years. Specifically, the Proposition and Resolution offered by the Beauregard Parish Police Jury stated:
 Shall Wards 4 and 6, Waterworks District No. 3 [the District], Beauregard Parish, Louisiana, levy a special tax of ten (10) mill on all property subject to taxation in said District for a period of ten (10) years beginning with the year 1975, for the purpose of acquiring the South Beauregard Water System, Inc. [the Corporation] and constructing and acquiring extensions and improvements thereto, title to which shall be in the public, said purposes to be carried out by the District on either an annual cash basis or through the funding of the avails or proceeds of said special tax in the manner provided by law.[3] [emphasis added]
As clearly stated in the Proposition, the tax was created for the purpose of providing funds for the District to acquire the Corporation's assets and to construct and acquire extensions and improvements thereto. After passage of the tax proposition, the District began to use the proceeds to improve and expand the waterworks systems, and to fund the Corporation as a form of payment toward the purchase the assets of the Corporation. Pending the execution of the asset sale documents the two entities continued to share public board meetings, office buildings, waterlines, employees, operation costs and resources. In addition, through an informal agreement, the District reimbursed the Corporation thirty-seven percent (37%) of the operating costs, including employee costs, payroll taxes, office leases, and insurance costs, etc. *Page 3 
However, the formal execution of the asset sale documents was delayed due to the fact that the Corporation was burdened with existing debt which could not be assumed by the District. Thus, the entities postponed formal execution of any acquisition documents until the Corporation's debt was extinguished. The debt has now been paid in full by the Corporation, but for reasons not fully made known, the parties have not to this day formally executed the documents confirming the acquisition.
The Attorney General's response to the questions you posed as follows:
 1. Does the Corporation have a continuing obligation to transfer its assets to the District, and to dissolve the Corporation based upon the tax election held on April 12, 1975?
La.R.S. 33:3815 provides the legal basis for waterworks districts, such as the District, to acquire by donation or purchase any existing waterworks system in the same district.[4] Accordingly, we find that the District had the authority to acquire the assets of the Corporation since both systems are being operated within the same territorial boundaries of Beauregard Parish.[5]
Article VI, Section 15 of the Louisiana Constitution of 1974 provides that "the governing authority of a local governmental subdivision shall have general power over any agency heretofore or hereafter created by it, including, without limitation, the power to abolish the agency and require prior approval of any charge or tax levied or bond issued by the agency."[6] The laws of the State of Louisiana provide that the proceeds of sales and use taxes must be utilized solely in accordance with the will of the electorate, as set forth in the proposition approved by the voters.[7] Our office has consistently opined that the *Page 4 
proceeds of a tax levied for a specific purpose can only be used for that purpose.[8] The proceeds of any special tax shall constitute a trust fund to be used exclusively for the objects and purposes for which the tax was levied.[9] Consequently, the jurisprudence of this state provides that special tax authorizations must be strictly construed.[10]
Through the powers given to them under Article VI, Section 15 of the Louisiana Constitution of 1974, the Beauregard Parish Police Jury proposed a special tax for the waterworks systems. This special tax was a ten (10) year millage property tax which was voted on and approved by the electorate on April 12, 1975, and renewed in 1985 for another ten (10) years. The tax was dedicated for the "purpose of acquiring the Corporation, and constructing and acquiring extensions and improvements thereto."[11] Consequently, the tax proceeds received from the millage tax must be used for the purpose of acquiring the assets of the Corporation, and constructing and acquiring extensions and improvements.
The tax proceeds collected by the District were, in fact, used to extend and improve the parish waterworks system and to serve the increasing needs of the parish. The District also used the tax proceeds to support the Corporation's operations as a form of payment toward the and of its assets. These actions were consistent with the purpose of the tax proposition wherein the District would acquire the assets of the Corporation. Given the fact that the payments have been made by the District, all that remains is for the District and Corporation to formally execute any and all documents necessary to transfer the assets.[12]
Notwithstanding the failure of the parties to execute the formal acquisition documents, the facts and documents provided reveal that the District and the Corporation have de facto merged and have been working as a single public entity since approximately 1975. The District was created, in part, to purchase the assets of the Corporation and form one public waterworks system. *Page 5 
It is also apparent from the minutes of the board meetings that both parties agreed to the asset sale and that the District has met its obligations under that agreement by making payments toward the purchase by funding the Corporation in various ways. These actions and agreements, along with the tax proposition, created an obligation on the part of both parties to finalize the acquisition.[13] The delay was due only to the fact that the Corporation was burdened with a debt that the District could not assume and thus the asset sale could not be effectuated until after the indebtedness of the Corporation was extinguished.
Nevertheless, since the passage of the tax proposition both entities have acted and cooperated as one public waterworks district. These actions have been exemplified through the entities conducting meetings simultaneously, and sharing the same board members, tax proceeds, building, waterlines, employees, operation costs and resources. For all intents and purposes, there was only one public waterworks district. All that remains to be done is to effectuate the written documents formally transferring the assets of the Corporation to the District. Therefore, it is the opinion of this office that the Corporation and District both have the duty and continuing obligation to execute any and all documents to finalize the acquisition of the Corporation's assets by the District.
2. Is the Corporation a truly private non-profit corporation, or is ita quasi-public non-profit entity, subject to the Open Meetings Law, thePublic Bid Law, and other governmental regulations applicable topolitical subdivisions of the State?
Assuming arguendo that there is no continuing obligation for the Corporation to transfer its assets to the District, our office has determined that the Corporation is a quasi-public entity due to its conduct and actions, and that pursuant to La.R.S. 38:3811, et seq, the governing authority of Beauregard Parish may acquire its assets.
Whether an entity is considered "quasi-public" depends on several factors. In State v. Smith, 357 So.2d 505, 507 (La. 1978), the court noted that a consistent theme ran throughout the cases addressing whether a certain entity was state office or agency, or whether a certain individual was a state or public officer.[14] The following factors were *Page 6 
considered: Whether (1) The entity was created by the legislature; (2) The powers were specifically defined by the legislature; (3) The property of the entity belonged to the public; and (4) The entity's functions were exclusively of a public character and performed solely for the public benefit.
Additionally, this office has consistently held that quasi-public bodies are those which are: (1) Not strictly private bodies, (2) Primarily funded by public bodies, and (3) Organized to serve a public purpose or provide a public service.[15] Quasi-public bodies are not strictly private bodies; they are not primarily funded by public finds, and they are not organized to serve a public purpose or provide a public service.[16] Strictly private bodies are those whose direct objective is to promote private interests or those bodies which derive nothing from the government except the right to be a corporation.[17]
In comparing the above factors with the relevant facts presented to us for review, this office finds that the Corporation is a quasi-public entity and as such, under the control of the parish governing authority. In our opinion, no one deciding factor was determinative, rather all facts and circumstances were considered as a whole. The Corporation was created as a non-profit corporation in order to finance the start up of the waterworks district through FHA loans.[18] Members of the police jury of Beauregard Parish served as the Corporation's board members at the time of its formation, thus evidencing the Parish's interest in forming the Corporation for the benefit of the Parish. While it seemed to start out as a non-public corporation, the entity continually acted for the benefit of the public by operating and extending a water system for the citizens, and did not act to promote private interests.[19] As a result of this objective, Beauregard Parish viewed the Corporation as a public waterworks district.
Additionally, throughout its existence, the Corporation has received public funds from the District through the informal agreement wherein the District paid the Corporation a *Page 7 
portion of the operating costs with tax proceeds specifically as consideration for acquiring the Corporation. The transaction transferring public funds collected for the public purpose of improving and expanding the waterworks districts further identifies the Corporation as a public entity. More importantly, it is clear from the facts provided that the Corporation and District currently and historically have acted and appeared as one entity; functioning exclusively as a public entity to serve and provide the public with water services. The degree of connexity between the systems shows a commitment of the entities to carry out together the duty to provide public water services.
Essentially, the Corporation has been run as a public entity since its creation despite being organized as a private corporation. Consequently, it is the opinion of this office that the Corporation should be considered a quasi-public entity. Therefore, the Corporation, as a public entity, is subject to the governing authority of Beauregard Parish who can execute any and all documents needed to formally effectuate the acquisition of assets and dissolve the Corporation.
In summary, it is clear that the Parish of Beauregard needed to create a waterworks district to provide additional water services to the public and required funding to do so. The initial establishment of the Corporation, which has always been viewed as a public waterworks district, provided the parish with a way to fund such services through federal loans. The creation of a second waterworks district, the District, and the passage of the tax proposition, supplied funding to improve and extend the waterworks system, and acquire the assets of the Corporation. The two districts de facto merged into one public entity after the millage tax was approved in 1975 and the acquisition took place. However, due to debt issues which burdened the Corporation, formal execution of the acquisition documents was delayed. Therefore, based on the facts presented to our office for review, it is our opinion that the District and Corporation have a continuing legal obligation to execute any and all documents necessary to transfer the assets of the Corporation to the.[20]
I hope the foregoing has adequately answered your question. If we can be of further assistance, please do not hesitate to contact our office. *Page 8 
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL Attorney General
 BY:__________________________ MERIDITH J. TRAHANT Assistant Attorney General
 JDC/MJT/ard
[1] The original system of the Corporation was funded by two 40-year loans from the USDA-FHA (now Rural Development), dated January 27, 1971, in the total aggregate amount of $480,000. In January of 1976, the Corporation was provided a 40-year loan of $355,800 and a grant of $337,200 to construct an extension to the system. Lastly, in June of 1988, the Corporation was given a loan-grant request from the FHA for $610,000 to provide fund for production and storage in order to meet a continued growth in customers.
[2] The District was originally known as Wards Four and Six Waterworks District No. 3, Beauregard Parish. After its boundaries were enlarged in early 1985, the name was changed to Waterworks District No. 3 of Beauregard Parish.
[3] This language is taken from the April 12, 1975 ballot that the electorate received during the election.
[4] Under La.R.S. 33:3811, a waterworks district may be created, divided or abolished, as long as any obligations that may have been incurred by the waterworks district during the period of its existence shall not be impaired; which essentially protects the customers of the waterworks districts. Atty. Gen. Op. 04-0103.
[5] In Atty. Gen. Op. 97-0256, this office opined that reorganization of the Lafayette Parish Waterworks District North and Lafayette Parish Waterworks District South was permitted as long as the reorganization did not impair any existing obligation of the waterworks districts. It was further determined that if the territorial limits or existence of any waterworks district are affected, La.R.S. 33:3811 must be followed to affect the change by adopting a resolution declaring the intended change, give the required notice of a hearing, and hold a hearing thereon.
[6] Atty. Gen. Op. 04-0160 opined that a waterworks district may not expropriate any existing waterworks system in the district as this action would be in violation of Article I, Section 4 of the Louisiana Constitution of 1974. However, a district could purchase or acquire by donation another waterworks system in the district.
[7] La.R.S. 33:2723; La.R.S. 2714; La.R.S. 39:704; Atty. Gen. Op. Nos. 06-0204, 04-0267, 03-0157, 01-0269, 98-0421, 98-0287, 96-0246, 95-0145, 94-0540, 94-0346, 93-0424, 93-0047 and 92-0050.
[8] La.R.S. 39:704; Atty. Gen. Op. Nos. 03-0049 and 02-0381.
[9] La.R.S. 39:704.
[10] Police Jury of the Parish of Acadia v. All Taxpayers, et al., 95-145 (La.App. 3 Cir. 3/29/95), 653 So.2d 94, rehearing denied; BrockV. St. James Parish Council, 407 So.2d 1265 (La.App. 4 Cir. 1981), writ denied; Hodnett v. Monroe City School Board, 277 So.2d 598 (La.App. 2 Cir. 1972) and Watkins v. Ouachita Parish School Board, 136 So. 591 (La. 1931).
[11] La.R.S. 33:2733 provides in pertinent part, that "the purpose or purposes for which each allocation shall be appropriated and expended shall be stated in the question or proposition submitted to the qualified electors. The question or proposition approved at said election shall constitute a full and complete dedication of the avails or proceeds of said tax and its provisions shall control the allocation and expenditure thereof".
[12] Specific performance requires a party to a contract to perform the terms of the contract when he has refused to fulfill his obligations. J.Weingarten, Inc. v. Northgate Mall, Inc., 404 So.2d 896 (La. 1981).
[13] La. R.S 42:1461(A) requires all public officials to administer public funds and property entrusted to them for public purposes and as a fiduciary. Additionally, La.R.S. 42:1461 imposes a personal obligation
upon public officials and employees and prohibits them from misappropriating, misapplying, converting, or misusing any funds or property under the custody of the public entity in the office or employment is held. [emphasis added] The breach of this obligation gives rise to an action in favor of the public entity for the recovery of such funds or property, and for damages resulting from the breach.
[14] Louisiana Insurance Guaranty Association v. Commission on Ethicsfor Public Employees, 95-0021 (La.App. 1 Cir. 5/5/95), 656 So.2d 670,674.
[15] Atty. Gen. Op. 93-0595.
[16] Atty. Gen. Op. 01-0271.
[17] Atty. Gen. Op. 01-0271; State v. Riverside Irrigation, Co., 142 La. 10, 76 So. 216 (1927).
[18] An entity can be a public entity even though it was not exclusivel'y created by the legislature, as required in Smith, supra.Spain v. Louisiana High School Athletic Association (LHSAA) 398 So.2d 1386
(La. 1981). In Spain, the Supreme Court reasoned that despite not being created by legislature, the LHSAA was a public body within La.R.S. 42:1, et seq, because it performed a public function, regulation of public education, and received public money earned by state school at athletic events.
[19] In State v. Nicholls College Foundation, 564 So.2d 682, 685 (La. 1990), the Supreme Court noted that a, "private nonprofit corporation organized to foster, promote, and protect the welfare of a public university was a "public body" for the purposes of the Public Records Act." The court held that funds received by the nonprofit corporation from another public corporation with the same purpose were public funds, furthering the nonprofit corporation's status as a public entity.
[20] The analysis and conclusion herein are specific to the facts presented; thus, the same conclusion may not be reached given a different situation.